MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Petitioner, v. SMITH et al., Judges.

### In Banc, February 20, 1900.

1. **Prohibition to Court of Appeals:** FEDERAL QUESTION. Where a federal question is involved, a court of appeals is wanting in jurisdiction to determine the cause on appeal thereto, and the Supreme Court has the right by the aid of a writ of prohibition to prevent it from proceeding further in the premises, and by its writ of *mandamus* to compel the cause to be certified to the Supreme Court for determination.

2. ———: APPEALS: FEDERAL QUESTION: BY WHAT COURT DETERMINED. It is for the Supreme Court, and not the court of appeals, to say, in such case, whether or not a federal question is involved.

3. ———: FEDERAL QUESTION: SUIT ON BOND GIVEN IN FEDERAL COURT. A suit in a state court on a bond given in an injunction suit in a federal court, for attorney's fees—whether the fees were paid for having the injunction dissolved, or the injunction was only ancillary to the main object of an action at law then pending in said

M., K. & T. Ry. Co. v. Smith.

federal court—does not involve a federal question in such a way as to give the Supreme Court jurisdiction of the appeal, although attorney's fees are not considered by federal courts elements of damages in suits on injunction bonds, and the state court had held, at the trial, under pleadings and instructions which did not raise the federal question, that attorney's fees were recoverable in the suit on the bond.

4. ———: ———: ———: JURISDICTION OF APPEAL. And if the validity of the injunction bond is admitted, the fact that attorney's fees are not considered elements of damages in the federal court where the bond is given, does not so raise a federal question as to give the Supreme Court jurisdiction of an appeal from a judgment of a state court allowing for a recovery of attorney's fees incurred in having the injunction dissolved.

5. ———: ———: ———: RAISED BY RECORD. It must appear from the record that a federal question has been raised. It can not be raised by a petition first filed in the Supreme Court in support of an application for a writ of prohibition against a court of appeals to prevent it from taking jurisdiction of the appeal.

6. Contract: INJUNCTION BOND IN FEDERAL COURT: ATTORNEY'S FEES. Whether or not attorney's fees are recoverable in a suit in a state court on an injunction bond given in a federal court, is not determinable by the fact that attorney's fees are not considered elements of damages in suits on such bonds in the federal court. The law of the land, and not the rules of practice or the administration of the law in a particular jurisdiction where the bond is taken, must govern in suits upon such contracts.

7. ———: ———: ———: CONSTRUED: ACCORDING TO STATE LAW. An injunction bond given in a federal court when sued on in a state court, is to be interpreted by the rules that govern the construction of like contracts in the state courts.

8. Writ of Prohibition: COURT OF APPEALS: LAST PREVIOUS DECISION. The Supreme Court will not, on an application for a writ of prohibition to a court of appeals, compel that court to certify to it a cause for final determination, on the ground that the decision of the court of appeals is in disregard of and contrary to the last previous ruling of the Supreme Court on the questions of law and equity involved in the case. This court can get jurisdiction of the case only when one of the judges of said court of appeals deems the decision of that court in conflict with a previous decision of this court or of a court of appeals. Nor does the constitutional authority of "a general super-

intending control over all inferior courts" invest the Supreme Court with authority to compel the transfer of the appeal to this court on that ground, even though this court may think its last previous decision on that point has not been followed.

## Prohibition.

WRIT DENIED.

*Geo. P. B. Jackson* for relator.

(1) The court of appeals transcended its constitutional power when it undertook to decide the case of Elliott v. Missouri, Kansas & Texas Railway Company in disregard of and contrary to the ruling of this court in the case of Brown v. Baldwin, 121 Mo. 126, which is the last ruling of the Supreme Court upon the questions of law and equity involved in the case before the court of appeals, which was therefore controlling authority in that court. This reason should not be confused with the point involved in various cases where efforts have been made to have cases certified from the courts of appeals because of the dissent of one of the judges of such court, or because one or all of the members of the court of appeals may have regarded the decision of the majority as being in conflict with a prior ruling of the Supreme Court. The various cases that have been decided have simply involved a proper construction of the first part of section 6 of the amendment of 1884 to the constitution, and those cases go no farther than to determine when it becomes the duty of the court of appeals to certify the case because of such view entertained by one or more members of that court. What is now contended in this case is, that a right guaranteed to this petitioner by the constitution has been violated by the action of the court of appeals, and that the only way in which the petitioner can be protected in that right is through the exercise of the superintending control of the Supreme Court over the court of appeals. Sparks v. Indemnity Co., 61 Mo. App.

109; Bank v. Woesten, 144 Mo. 407; Smith v. Railroad, 143 Mo. 33; Schafer v. Railroad, 144 Mo. 170.   (2) "The last previous rulings of the Supreme Court on any question of law or equity shall in all cases be controlling authority in said courts of appeals."   Section 6; State ex rel. v. Rombauer, 101 Mo. 505.  "There is another change which is not so clearly expressed by the amendment, but which in our opinion is sufficiently obvious, namely, that this court is still the final arbiter in all those controversies which are specified in section 12, no matter in what court they may originate. Before the amendment this court had appellate jurisdiction in all cases involving the construction of the constitution and the other specified cases, including cases involving the title to an office under this State.   It had such jurisdiction though the case originated in the court of appeals.   There is nothing in the amendment which can by any fair construction be said to take away from this court appellate power in all such cases."   State ex rel. v. Rombauer, 105 Mo. 107; State ex rel. v. Philips, 97 Mo. 340; State ex rel. v. St. Louis, Court of Appeals, 99 Mo. 221; High on Extr. Leg. Rem., sec. 781; Quimbo Appo v. People, 20 N. Y. 531; 2 Spelling's Extr. Relief, sec. 1719.   (3)   The second reason for granting a writ of prohibition in this case is that the case of Elliott v. Railroad, involves a federal question, and the jurisdiction is therefore in this court.  Const., art. 6, secs. 12, 27; Amendment of 1884, secs. 4, 5; State v. Chandler, 132 Mo. 164. In the case of Elliott v. Railroad Company, the defendant there, by its answer, and then by its instructions, as well as by the evidence in the case, contended, and in its subsequent briefs in the court of appeals insisted, that the liability, if there was any on the part of the defendant, arose out of the proceeding in the federal court, and arose from the compliance with the order of that court made in conformity with and in obedience to the laws of Congress and the rules of practice in federal courts, which have the force of statutes.   There

was thus involved the construction of an authority exercised under the United States; and a proper determination of the rights and liabilities arising out of and depending upon this exercise of authority, and of the administration of justice in the federal courts in pursuance of the federal laws, involves the application of the proper rules of law to such rights and liabilities. It involves the consideration of any immunities that may be enjoyed or arise under such laws, hence the question is presented and is involved in the case in such a way as to require its determination; and therefore in such a way as to vest the jurisdiction of the case in the Supreme Court. Northcutt v. Eager, 132 Mo. 265; Parker v. Zeisler, 139 Mo. 298. Recently, during the present term, Division One, of this court transferred two cases, Edwards v. M., K. & E. Ry. Co. and Griffin v. Same, to the Kansas City Court of Appeals, because those cases did not, in the judgment of the court, involve title to real estate in such manner as to confer jurisdiction upon this court, yet no objection to the jurisdiction was made by anyone in the case. The court of its own motion inquired into cases in order to determine, as a preliminary matter, whether or not it was properly vested with jurisdiction to decide the cases. Railroad v. Iowa Homestead Co., 123 U. S. 552; Carson v. Dunham, 121 U. S. 421. (4) The law in force in the jurisdiction where the bond is made at the time it is made is to be considered as incorporated in it and as a part of the contract; where there is no statute prescribing the conditions of the bond they are determined by the rules of court which take the place and have the effect of statutes, and such a bond is a part of the record in the case, and in the court in which it is given, and therefore the law and the rules of practice in the federal court entered into and became a part of the bond sued on in the case of Elliott v. Ry. Co. Mix v. Vaile, 86 Ill. 40; 2 Am. and Eng. Ency. of Law, 466; Murfree on Official Bonds, sec. 401; Newell v. Partee, 10 Humph. (Tenn.) 325; Pickett v. Boyd,

11 Lea (Tenn.) 498; Nolan v. Johns, 27 Mo. App. 502; Rubelman Hdw. Co. v. Greve, 18 Mo. App. 6; Teasdale v. Jones, 40 Mo. App. 243; Kinealy v. Stead, 55 Mo. App. 176.

*W. M. Williams* and *John Cosgrove* for respondents.

(1) The circuit court of Cooper county in suit on the injunction bond necessarily decided upon the evidence that the services rendered by Elliott's attorneys were rendered in obtaining a dissolution of the injunction, and not in defending the main suit. The Kansas City Court of Appeals, after a thorough examination of the record in that case and lengthy argument by counsel, held that the circuit court of Cooper county decided correctly. The issue was one of fact and this court will not undertake to review the action of the trial court or the judgment of the Kansas City Court of Appeals in this proceeding. (2) The right to sue in a state court upon an injunction bond given in a federal court is no longer an open question. Hannibal & St. J. Ry. Co. v. Shipley, 1 Mo. App. 254; Walsh v. Lackland, 8 Mo. App. 122; Mitchell v. Hawley, 79 Cal. 301; Aikins v. Leathus, 40 La. Ann. 23; 2 Suth. on Damages (2 Ed.) sec. 525; Elliott v. Ry. Co., 2 Mo. App. Rep. 151; Meyers v. Block, 120 U. S. 206. (3) Counsel fees are allowed as damages on the dissolution of injunctions in this state. Brownlee v. Fenwick, 103 Mo. 420; Hammerslough v. Building Ass'n, 79 Mo. 80; Shores v. Shores, 34 Mo. App. 208; Holloway v. Holloway, 103 Mo. 285. (4) Elliott could not maintain a suit on the injunction bond until there was a final decree in the case in which the injunction was granted. Cohn v. Lehman, 93 Mo. 574; Neiser v. Thomas, 46 Mo. App. 47. (5) The decision of the Kansas City Court of Appeals in the case of Elliott v. M., K. & T. Ry. Co., is not in conflict with the last previous ruling of the Supreme Court in allowing counsel fees as damages in a suit upon an injunction bond. In Brown v. Baldwin, 121 Mo. 126, the Supreme Court did not

hold, or intend to hold, that counsel fees incurred in procuring the dissolution of an injunction, where the facts warranted, could not be recovered as damages in a suit upon an injunction bond. All the Supreme Court decided, or intended to decide, was that upon the facts in that record, counsel fees should not be allowed. The court did not attempt, or intend, to overrule the cases of Brownlee v. Fenwick, 103 Mo. 420; Hammerslough v. Building Ass'n, 79 Mo. 80; Holloway v. Holloway, 103 Mo. 274, and Alliance Trust Co. v. Stewart, 115 Mo. 245. (6) The determination of this question is, by section 6, of the amendment to the Constitution establishing the Kansas City Court of Appeals (Law 1883, p. 216), submitted to that court. The Kansas City Court of Appeals necessarily had to determine that question. The decision in Elliott v. M., K. & T. was concurred in by all of the judges of that court, and its decision is a finality. Bank v. Woesten, 144 Mo. 409. (7) There must be something in the record made in the trial court which raises a constitutional question before the court of appeals can be deprived of its jurisdiction to hear and determine a case properly appealed to that court. The court of appeals can not be shorn of its jurisdiction by the mere assertion of counsel, in a brief, that a constitutional question is involved. Lang v. Callaway, 134 Mo. 491; Nall v. Railroad, 97 Mo. 68; Wabash Ry. Co. v. Siefert, 41 Mo. App. 35. (8) It can not be contended, with any degree of fairness, that because the rules of practice in equity in the United States courts do not allow attorneys' fees as damages on injunction bonds that an allowance of such in a suit in a state court on an injunction bond, given in a federal court, raises a federal question. 2 Foster's Fed. Pract., p. 1005; Johnson v. Reik, 137 U. S. 307.

ROBINSON, J.—On the 4th day of February, 1899, the relator presented to this court its petition for a writ of

prohibition, to be directed to Jackson L. Smith, James Ellison and Turner A. Gill, Judges of the Kansas City Court of Appeals, to prevent them from farther proceeding in the case of John S. Elliott v. Missouri, Kansas & Texas Railway Company, heretofore appealed from the Cooper County Circuit Court, and to further prohibit the respondent from in any manner or to any extent carrying out the judgment entered in said cause, with the prayer that the writ in this case may be so framed as to command the respondent to certify and transfer to this court the record and proceedings in the case of Elliott v. Railway Co., pending in the Kansas City Court of Appeals, of which the defendants are the present judges, and to annul any and all prior proceedings of the respondents as judges of said court in said last named case. Upon this petition an order was duly made to Jackson Smith, James Ellison and Turner Gill to appear before the court on the 7th day of March, 1899, and show cause why the writ of prohibition should not issue as prayed for, with the further order that, in the meantime, all proceedings in the case of Elliott v. Railway Co., pending therein, be stayed until the further order of this court is made in the premises.

This case is presented to the court upon the facts as stated in relator's petition, the sufficiency of which is challenged by demurrer filed on the part of the defendants. Without setting out the petition, it is sufficient to say that the relator contends for two reasons the writ in this cause should be issued:

First: Because the court of appeals transcended its constitutional power and undertook to decide the case of Elliott v. Missouri, Kansas & Texas Railway Company in disregard of and contrary to the ruling of this court in the case of Brown v. Baldwin, 121 Mo. 126, which, it is alleged by the relator, is the last ruling upon the question of law and equity involved in the cause, before the court of appeals, and ought therefore to have been controlling authority in that court; and,

Second. Because a federal question is involved in a proper determination of the case of Elliott v. Railway Co., appealed from the Cooper County Circuit Court, and for that reason the court of appeals was without jurisdiction to hear and determine the same, and that, as the constitutional right guaranteed to the relator had been violated by the act of the respondents in the premises, the only relief now open to it is through the exercising control of this court over the court of appeals, of which respondents are judges.

If relator's second contention is well made, it has an unqualified right to the writ asked for. If in the case of Elliott v. Railway Company, begun in the Cooper County Circuit Court, a federal question is involved, the Kansas City Court of Appeals was and is wanting in authority to try the cause, and the jurisdiction thereof is in this court, and this court has the right, by aid of its writ of prohibition to prevent that court from proceeding further in the premises, and by its writ of *mandamus* to compel the cause to be certified to this court for determination.

If in that case authority exercised under the United States is drawn in question, then by section 4 and 5 of the amendment of our constitution of 1884, express jurisdiction is conferred upon this court to hear and determine the question on appeal, and authority is denied the Kansas City Court of Appeals. On this proposition, unlike in the first, the question to be considered is not whether the Kansas City Court of Appeals may have decided properly or not the question presented to it, for if a federal question is in the case, the Kansas City Court of Appeals had no jurisdiction in the premises and was wanting in authority to consider the case at all, as courts at all times are under the imperative duty first to inquire into its authority to try a cause and then to keep within the proper limits of jurisdiction prescribed by law, that law may be administered from lawful tribunals, and not by usurpations in the name of law.

Was there a federal question involved in the case of Elliott v. Railway Company, as it appeared in the Kansas City Court of Appeals on appeal from the Cooper county court? That is the question first before us for determination. If a federal question is in the case at all, it is by virtue of what appears in the records, and if it is there in that way, that fact settles the jurisdiction and determines the proper court to which the appeal should have gone in the first instance, and the want of authority in the Kansas City Court of Appeals in all that has been done up to the time of the application for this writ of prohibition is manifest.

The petition filed in the Cooper County Circuit Court set out the fact that on the 29th day of November, 1893, there was pending in the circuit court of the United States for the central division of the western district of Missouri, a suit by the said Elliott against The Missouri, Kansas & Texas Railway Company (the relator herein) to recover from it $37,759.73, for railroad ties furnished the railway company by said Elliott; that the railway company then instituted its suit in equity in said United States court to obtain an injunction against said Elliott, to restrain the prosecution of said suit against it, and that such proceedings were had therein, that a temporary injunction was granted, upon the execution by the railway company together with E. C. Simmons and William Nicholl as its sureties, of the bond sued on, in the sum of $20,000, conditioned that if the said railway company will abide the decree which may be made in said cause out of which said injunction was issued, and shall pay all sums of moneys, damages and costs that may be adjudged against it if the said temporary injunction shall be dissolved, the bond shall be void, otherwise to remain in full force and effect.

For breach of said bond the petition set out the following assignments: that said temporary injunction was dissolved and that the plaintiff, in and about procuring the dissolution of said injunction, was put to great trouble and expense, and

necessarily laid out and expended large sums of money and incurred great liabilities; that he was compelled to spend much time in procuring evidence to secure the dissolution of said injunction, and that he employed attorneys to represent him in said matter, and incurred large liabilities on account thereof. Then followed a detailed statement of the amount of the different items of expense and liabiblities incurred, aggregating the sum of two thousand dollars, closing with a prayer for judgment for the penalty of the bond, and that execution issue for the damages sustained by him in the sum of $2,000, with costs of suit.

To plaintiff's petition the defendant railway company filed the following answer, caption and title omitted:

"Now comes the above named defendant, and, for answer to the plaintiff's petition herein, admits that it was, and is, a corporation organized according to law; that at the times stated in the petition there was pending in the circuit court of the United States for the central division of the western district of Missouri a suit instituted by this plaintiff against this defendant, as alleged in the petition, and that the defendant instituted a suit in equity in said court against the plaintiff, and that in said suit a temporary injunction was granted, and that the defendant, as principal, with E. C. Simmons and William Nichols, as sureties, executed an injunction bond as stated in the petition, but defendant denies that said suit in equity was instituted by this defendant to obtain an injunction against the plaintiff, and defendant alleges that the granting of said injunction was merely an incident to said suit instituted for the main and principal purpose of cancelling and annulling a certain alleged report of inspection of ties, all of which proceeding was necessary to enable this defendant to make its defense in the said United States court to the action instituted by this plaintiff against this defendant as stated in the petition.

"Farther answering said petition, this defendant denies

each and every other allegation thereof, and, having fully answered, defendant prays to go hence without day, and that it recover its costs in this behalf expended."

Upon the face of the petition and answer filed in that case, as well as in the motion for a new trial, nothing is shown to have suggested to the court of appeals, when the case reached there, that a federal question was involved in its determination, that would operate to defeat its jurisdiction in the premises, or that would require its certification to this court. Likewise an examination of the brief filed by the appellant in that case with the Kansas City Court of Appeals, fails to disclose that evidence was offered or called for by appellant in the trial of the case before the circuit court, or that instructions were asked for or given, that would indicate the existence of a federal question in the case; nor was a federal question raised or suggested by this relator, in its brief and argument filed with the court of appeals, when the case was being considered by that court. The relator's objection to the proceedings, and judgment against it in the circuit court, before the court of appeals, is thus fairly and briefly stated by that court in its opinion therein, as follows:

"First, that there was no breach of the conditions of the bond in that it was not alleged or proved that any damages had been previously adjudged against the defendant, whereas the condition of the bond is that defendant 'should pay all sums of money, damages and costs that shall be adjudged against it,' etc.; and, secondly, it is contended, that as the injunction bond was given in a proceeding pending in the United States court, the damages must be fixed and determined according to the rules and practice of the federal courts; that attorneys' fees are not there considered elements of damage in suits on injunction bonds and that therefore our state courts should apply the same rule in suits on bonds given in the federal court; and, thirdly, it is in-

sisted that the trial court erroneously allowed as damages attorneys' fees for defending the entire case—that the injunction was merely incidental to the principal case and no attorneys' fees were paid to secure its dissolution."

It is thus to be seen that the main and principal question relied upon by defendant in that case in the trial court, as well as in the Kansas City Court of Appeals, was that the injunction in the United States court, in the suit wherein the relator here was there complainant, and John S. Elliott was defendant, was only ancillary to the principal object of the action, and that the liability for counsel fees was incurred in defending the action generally, and that the dissolution of the injunction was only an incident to that result, and that counsel fees on the injunction bond are not properly recoverable for such services under such circumstances, but are limited to such services only as are necessarily incurred in dissolving the injunction when that is the relief sought by the action.    Upon that question, as thus raised and presented, the facts in the circuit court were found against the defendant (the relator herein) and as no federal question was raised in its consideration or involved in its determination, and as the amount of the judgment rendered, on the determination of the question of facts, under the applicatory law was less than $2,500, the case on appeal was properly sent to the Kansas City Court of Appeals.

But says the relator, conceding that the injunction bond given in the federal court was properly sued on in the Cooper County Circuit Court, and that the amount of judgment obtained thereon was such as to confer jurisdiction of the case on appeal in the Kansas City Court of Appeals, still the order of the federal court requires the bond in the first instance, the order filing it and making it a part of the record and proceedings in the federal court; the law of that court governing the liability under such bonds, all became a part of the contract evidenced by the bond, and are involved

in a suit upon that instrument, no matter in what court such suit may be instituted, and without regard to the fact whether the questions raised and considered were named or designated as federal questions or not; that authority exercised under the United States is necessarily involved and drawn in question by the suit on the injunction bond issued under the direction of the federal court, and that to ignore its mandates will not eradicate the question, or its existence.

To us the contention of relator does not seem tenable. We fail to discover from the record anywhere, how "the validity of a treaty or statute of, or authority exercised under the United States is drawn in question," or that a federal question may be said to have been involved in the case. In fact, both the petition and the answer in the case before the trial court, recognized the validity of the bond, and the action of the federal court in all its orders regarding or affecting same. It is upon the bond as a valid instrument, issued by order of proper authority, that plaintiff's suit in the circuit court is predicated, and the relator's answer (as defendant) in that suit admits that it executed the bond under the facts as stated in the petition, and by way of defense thereto the relator simply answered that the injunction suit in which said bond was given, was a mere incident to a main suit then pending between the relator and said John S. Elliott, and that for dissolving the injunction under such circumstances attorney's fees are not allowable as an item of damages. That a federal question could have been raised is not denied; but that such a question was not raised, is most manifest.

If no challenge of authority exercised under the United States is in fact made by the record, the mere assertion of its existence by counsel, coupled with the further fact that such a question might have been made under a proper answer, or by the development of a proper state of facts during the progress of the trial, will not suffice to deprive the Kansas

City Court of Appeals of its jurisdiction to hear and determine upon the case as it reached that court, or to invest this court with jurisdiction thereof.

Nor can we agree with counsel for relator in the proposition asserted, that the law or the rules of practice in the federal court, enter into and become a part of the contract evidenced by the bond taken therein, and to be treated and considered as if incorporated in it, and as forming a part of the contract, in a suit upon the bond in the state court.   The law of the land, the *lex loci contractu,* and not the rules of practice or the administration of the law in any given way in a particular jurisdiction when a bond is taken, must govern in suits upon such instruments.   When the relator and his sureties signed the bond in the injunction proceedings, in the United States Circuit Court at Jefferson City (instituted by itself as plaintiff against John S. Elliott as defendant), they contracted with the defendant therein to become liable for and to pay all sums of money, damages and costs, that shall be adjudged against the plaintiff, in those proceedings, if the injunction should be dissolved—not merely such damages as under the rules and practice of that court are allowable therein, but all damages allowable by the law of the place where said bond is made and executed, as the same is administered in the courts of the situs of the bond.

A bond of this character, sued on in a state court, is to be interpreted by the rules that govern the consideration of a like instrument executed in the state courts, and while the obligors in this bond may be said to have known when they executed it, that in the United States court they would not be held liable to pay attorneys' fees, they must have also known, and did in contemplation of law know, that in a proceeding in our state court upon like instruments, attorney's fees are allowable as one of the items of damages recoverable, when the injunction shall be dissolved by the labor and efforts of attorneys employed for that purpose, and

that if the suit on the bond to be signed was begun, as in this case, in a state court, the rules of interpretation governing such obligations there would apply to this bond.

Neither the rules, the practice or procedure, nor the mode and manner of administering the law in the United States court, applicable to the liability of bondsmen on an injunction bond given in that court, can in any wise be drawn in question, so as to present a federal question in a suit in a state court on the bond, when its validity, as in the case of Elliottt against the relator railway company, begun in the Cooper County Circuit Court and now pending on appeal in the Kansas City Court of Appeals, is admitted and where no question as to the court's authority to order the bond as given is or was made by the relator.

As said, the relator, as defendant in the suit now pending in the Kansas City Court of Appeals on appeal, contested the issue by an answer that in no way drew in question authority exercised under the United States, nor did it set up any claim of right by authority exercised under the United States, as abridged or taken away, nor did it deny that the state court, wherein the suit was instituted, had authority to hear and determine the case. The authority of the Cooper County Circuit Court to hear and determine the case in the first instance is conceded by counsel.

While there is no doubt upon the question as to the power of the federal court of equity to have imposed such terms as it chose as a condition to granting the injunction, it is equally true that when it had imposed conditions such as those stipulated in the bond in suit (in the case of Elliott v. Railway Co., now in the Kansas City Court of Appeals on appeal), that court had no authority under its rules of practice and procedure, to render a judgment for the damages occasioned by the conditions broken, on the dissolution of the injunction, but it must, as it did, leave the obligee then to proceed in a court of law for such damages as were occa-

sioned to the defendant in that suit. As the obligee is driven of necessity to a court of law, to recover his damages on the dissolution of the injunction in the federal court of equity, the condition of the bond would be meaningless in many instances if only a federal court could hear and determine the issue involved. If in a federal court alone, such bonds could be sued on, when the obligor and obligee therein were citizens of the same state, the bond would become a meaningless nothing, as no right thereunder could be enforced in a federal court, on account of common citizenship.

The validity of no statute, treaty or authority exercised under the United States being drawn in question by the relator's answer in the suit on the bond in the Cooper County Circuit Court that would operate, under article 6, section 12 of the constitution of this state, to divest the Kansas City Court of Appeals of jurisdiction thereof, hence, no authority in this court by a writ of prohibition to order that court to stay proceedings therein or to transfer the case here for final disposition on that account, as asked by relator. But relators further contend if it be conceded that the case of Elliott against the railway company was properly sent to the Kansas City Court of Appeals from the Cooper County Circuit Court, and that no federal question is involved, still, under its superintending control over the court of appeals and other courts of the state, this court, by its writ of prohibition can and should arrest all further proceedings in that court and order the case transferred here, when it is shown that that court has transcended its constitutional limitations and restrictions and assumed to act in disregard of the limits placed upon its power within that jurisdiction; and that, since there no longer exists the remedy of appeal to this court as a means of controlling the action of the court of appeals, and since the constitution has lodged the superintending control over that court exclusively in this, and in the same article provided prohibition as one of the means to effect that end,

it should be exercised in this case when the court of appeals has undertaken to dispose of the case in total disregard of, and contrary to the law governing such cases in the Supreme Court, in violation of the constitutional mandates of section 6 of the amendment of 1884, which provides that "the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said court of appeals."

Relator's contention boldly announced is, that the constitutional requirements above quoted is a limitation upon the power, authority and jurisdiction of the court of appeals, as are those provisions which deny its jurisdiction in cases involving the construction of the constitution of the State and United States. In this we think the relator in error. While it is an unquestioned right of the litigant in that court to have his or her case adjudged according to the last previous ruling of the Supreme Court upon the law and equity involved therein, as it is the constitutional right of all litigants, in whatsoever court of the State his or her case may be assigned, to have it tried and determined according to the law of the land, which means nothing less than the interpretation of the law as finally declared by this court, the interpretation of the law in its application to the given facts of a case, must, of necessity, be left to the court given jurisdiction of the subject-matter of the case assigned to it for consideration and determination. If otherwise, and if as contended by relator, the mere failure of an inferior court to rightfully interpret all rulings of this court, would be authority under its superintending power, and armed with its writ of prohibition, to have certified to it, such cases for final adjudication and determination, the writ of prohibition would but perform the office of a writ of error or the process of appeal, and dispose of, in many instances, the necessity of intervening courts through which cases, under existing provisions of law, must pass, before the opinion of the court of appeals or this

court, can be taken upon the questions of law involved therein. Such certainly was not the purpose or intent of the amendment of 1884, and such not the scope and meaning of the language, "The Supreme Court shall have a general superintending control over all inferior courts," as found in section 3 of article VI of the constitution, or that, "The Supreme Court shall have superintending control over the courts of appeals by *mandamus*, prohibition and *certiorari*," found in section 8 of the constitutional amendment establishing the Kansas City Court of Appeals, adopted in 1884. Within the range of its jurisdiction, the court of appeals, no less than this court, has the right to determine for itself, all questions of law involved in a case before it, and because a defeated litigant therein, or this court upon an application for a writ of prohibition may consider that the law has not been properly applied by that court to the facts in issue, or because we think the last previous ruling by this court, upon the law involved, has not been followed, we have no right by prohibition, to order that court to stay all further proceedings therein and to certify the record in the cause to this court, that we might review its finding and judgment. Such, under the name of "superintending control" is the object sought by the writ herein, clothe the proposition in any form you may. Appeals, writs of error, and *certiorari* alone are the remedies to accomplish the review and reversal of error in judgments of inferior courts, and such is not the office of the writ of prohibition.

Recognizing the existence as well as the necessity of the constitutional requirement above set out, that harmony might prevail as near as possible in our laws, and that by one fixed standard justice might be administered alike to all litigants, as our courts are now constituted, with the dual system of appeal, that laws will not and can not in all cases be administered alike, is as certain as the evidence of the attempt to attain that desired end by the adoption of the above named

provision of the constitution, declaring that "the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeals."

While the virtue of that constitutional provision is to be commended, and its mandatory direction should be obeyed by the court of appeals under all circumstances, still this court by constitutional limitations and restrictions, not less binding upon it than those upon the courts of appeal, can assert its jurisdiction over cases properly in that court on appeal for determination in the first instance, only as provided by section six of the amendment of the constitution of Missouri adopted in 1884, establishing that court and defining its jurisdiction, when "one of the judges therein sitting shall deem any judgment rendered by that court contrary to any previous decision of any one of the said courts of appeal of the State, or of the Supreme Court," that court must, of its own motion, pending the same term and not afterwards, certify and transfer said cause or proceeding and the original transcript therein, to the Supreme Court, and thereupon this court must rehear and determine said cause or proceeding as in case of jurisdiction obtained by ordinary appellate process.

The essential condition to the assertion of jurisdiction by this court over cases properly in the court of appeals on appeal, is that one of the judges of that court must have deemed the decision rendered therein contrary to some previous decision of either of the courts of appeals of this state or of the Supreme Court. Under those constitutional conditions and limitations only is this court authorized to assert jurisdiction over and to hear and determine a case once properly in the court of appeals, and without those precedent conditions we are denied authority in the premises.

In the recent case of Seaboard Nat. Bank v. Woesten, 144 Mo. 407, certified to this court by the St. Louis Court of

Appeals upon an order wherein it was stated by said court of appeals that it was of the opinion that its decison therein was not in harmony with the decision of the Supreme Court in Barber Asphalt Co. v. Ullman (137 Mo. 543), lately decided by the Supreme Court, this court refused to hear and consider the case, or to attempt to reconcile the seeming conflict which that court saw in the opinion of this court, but remanded the cause to. that court for final disposition, and during the course of the opinion remanding the case to the court of appeals from whence it had been certified, this court, through GANTT, C. J., said: "No provision is made for taking the opinion of this court in that way. It is only upon a division of opinion in the appellate court that it can certify the cause to this court. When that court unanimously concurs in its interpretation of a decision of this court, but one alternative remains, and that is, to follow it. If on the other hand it deem any decision of this court not applicable to the facts before it, in judgment, the mere fact that such decision of this court is later in date, and is cited as controlling authority, will not prevent that court from judicially determining which decision it regards as the last upon the question presented in their record . . . . . . . However desirable such a practice may be the Constitution does not confer the right, or impose the duty on the courts of appeals to thus require this court to harmonize its decisions, nor does it confer jurisdiction on this court to hear a cause under such circumstances."

So in the case of Smith v. Mo. Pac. R'y Co., 143 Mo. 33, certified to this court by the Kansas City Court of Appeals, for the reasons as expressed in the order transferring the case here, "One of the judges is doubtful whether or not the conclusions reached in the judgment herein can be harmonized with the opinion of the Supreme Court in the case of Louisiana National Bank v. Laveille, 52 Mo. 380." This court refused to consider the case, or to attempt to reconcile

the doubtful inharmony expressed by the judges of that court, because wanting in jurisdiction on the facts recited in the order transferring the case here, and remanded the case back to that court to be finally disposed of therein. In that case the proposition was clearly announced that jurisdiction is conferred upon this court, of cases properly in that court, solely and only upon the fact that one of the judges has judicially determined that a conflict exists between the decision rendered in that court, and some former decision of this court or one of the courts of appeal.

The doubt or apprehension of a conflict in the mind of one or all of the judges of the court of appeal; the opinion of the judges of this court, supplemented and fortified by the deep-seated and earnest conviction of the defeated litigant and his counsel, that the conclusion reached and announced by the court of appeals in any given case is in conflict with some previous ruling or decisions of this or either of the courts of appeals, can not oust the court of appeals of its authority over a case properly before it, or invest this court with jurisdiction to hear and determine the same.

This court has also frequently denied the writ of *mandamus* to compel inferior courts to render particular judgments upon allegations in the application for the writ of the existence of a state of facts that clearly would have called for the rendition of such a judgment had the law been properly applied, but where the court acting on the first instance in its judicial capacity determined otherwise. For like reason prohibition in this case will be denied, when the reason assigned for its exercise is that the court of appeals has decided the case before it contrary to and in disregard of the last previous ruling of this court in the case of Brown v. Baldwin, 121 Mo. 126, or for that matter any or all other decisions and opinions of this court. The right of the court of appeals to consider and determine a case, when before it,

involved of necessity the right to determine it incorrectly as well as correctly. The right to consider, the right to determine and to adjudge, is but the right to exercise the court's best judgment, not an infallible or an unerring judgment, and when the judgment of that court was exercised in the decision made in the case of Elliott v. Railroad, it became the law for that case, and was final, although this court and the counsel for relator may deem the same out of harmony with some previous ruling or decisions of this court or of one of the courts of appeals. For the foregoing reasons the writ of prohibition will be denied. *Gantt, C. J., Burgess, Brace, Marshall* and *Valliant, JJ.*, concur; *Sherwood, J.*, absent.