JAMES M. JENKINS, ADMINISTRATOR OF THE ESTATE OF WILBUR F. JENKINS, DECEASED, RESPONDENT, v. WABASH RAILWAY COMPANY, APPELLANT.—107 S. W. (2d) 204.

Kansas City Court of Appeals. May 3, 1937.

440

*Davis & Davis, Dean H. Leopard, Prince & Beery, Hume & Raymond* for respondent.

*S. J. Jones, Paul D. Kitt, Randall R. Kitt* and *Homer Hall* for appellant.

REYNOLDS, J.—1.—The plaintiff, administrator of the estate of Wilbur F. Jenkins, deceased, brought this suit under the Federal Employers' Liability Act, seeking to recover damages for the death of the said Wilbur F. Jenkins. The suit was instituted in the circuit court of Daviess county, against the Wabash Railway Company, a corporation, and Arthur Lovell, one of its section foremen, as defendants, on petition filed December 30, 1929. The suit was thereafter transferred by change of venue to the circuit court of Livingston county, where it was tried on January 21, 1931, before the regular judge thereof and a jury, resulting in the discharge of the defendant Lovell and a judgment against the defendant Wabash Railway Company in the sum of $9,000. From that judgment, the defendant appealed to the Supreme Court of Missouri, which court reversed the judgment and remanded the cause on account of errors not necessary here to state. [Jenkins v. Wabash R. Co., 335 Mo. 748, 73 S. W. (2d) 1002.]

The case was retried upon such remand at the April term, 1935, of the circuit court of Livingston County before the court and a jury, resulting in a judgment for the plaintiff in the sum of $7,500. From said judgment, after unsuccessful motions for new trial and in arrest of judgment, the defendant prosecutes this appeal.

Upon its appeal to the Supreme Court, the defendant filed a bill of exceptions, in which was preserved the evidence of the plaintiff's witnesses, G. H. Harrington and Lester Atherton, given on the first trial. On the trial resulting in the judgment from which the appeal under consideration herein was had, the evidence of both such witnesses was introduced and read from the said bill of exceptions. The evidence of such witnesses was the only evidence introduced in the cause by the plaintiff upon which he relied to establish the negligence of the defendant.

The Supreme Court, in its opinion, stated (l. c. 1006, 1007 of 73 S. W. (2d) the essential controlling facts, as follows:

"It appears from the record that the accident occurred at a switch east of Wakenda, in Carroll county, Mo. Appellant's main line ran east and west through Wakenda. North of this main line and east of the station was a passing track. This was over a quarter of a mile in length, and lay parallel with the main track, except where it connected by switch with the main line at each end. There was a curve in the main line as the switch at the east end of this passing track was approached from the west. At the east end of the passing track was a standard switch and switch stand. This consisted of a target, which was a piece of metal 30 or 32 inches long and 8 inches

wide. If the target was pointed east and west, or parallel with the main line track, it meant there was no danger on that track; but if the target was pointed north and south it meant there was danger on the main line. This target was located on a switch stand 8 or 10 feet high. When the target was turned crosswise with the main line, indicating danger, it could be seen for one-half mile to the west. The switch points could be seen four or five hundred feet.

"On the day of the accident deceased was performing his regular duties as a section hand, working on the main line in and around Wakenda. About 11:10 a. m. he and other members of the crew were ordered by foreman Lovell to board the motorcar, provided them by appellant, and go with him to a work train on the main line about a quarter of a mile east of the switch at the east end of the passing track for the purpose of loading ties and unloading some other materials. Defendant Lovell, who was appellant's section foreman in charge of this crew, gave these orders and boarded the motorcar with his men. Three of the section crew sat on the north side of the car facing north. Deceased was one of this number, and sat farthest east. Two more of the crew sat on the south side of the car facing south, while foreman Lovell sat at the southwest corner of the car operating it, and facing east, or the direction in which the motorcar was going.

"Immediately prior to this movement deceased and other members of the section crew had been working on appellant's main line west of the depot at Wakenda. The curve in the track east of the depot, together with the depot building, prevented them from seeing the switch before they started on the journey which resulted in the accident. There was a flagman from the work train near the station at Wakenda which was about one-half mile west of the switch. Upon the orders of their foreman the crew loaded their car on the south passing track west of the station. They found the switch closed for this passing track and open for the main track. In order to get on the main track the crew lifted the car and set it over on the main track.

"As trains approached on the main track that morning the work train was moved onto this north passing track and out again to work on the main track when it was cleared. About fifteen minutes before the motorcar bearing the section crew reached this switch, appellant's conductor in charge of the work train opened the switch to allow the work train to move from the passing track to the main track after a train had just passed on the main track. After this movement was accomplished he left the switch open for the passing track and closed for the main track, with the switch target pointing crosswise with the main track. He then proceeded east on the main track with the work train, and was about 1,200 feet east of the

switch stand when the motorcar reached it. No employee was left in charge of the switch, and this conductor did not learn of the derailment until he went to Wakenda at noon. In this connection defendant railway company's published rule No. 104 was offered and received in evidence, which rule is as follows:

" 'Switches must be left in proper position after having been used. Conductors are responsible for the position of the switches used by them and their trainmen, except where switch tenders are stationed, but, when practicable, the engineman must see that the switches nearest the engine are properly set.

" 'A switch must not be left open for a following train unless in charge of a trainman of such train.' "

. . . . .

"As the motorcar proceeded eastward toward the work train it was going full speed. There was nothing to obstruct the view of the section foreman and his crew as they approached this switch. The work train was unloading ballast, and slowly moving westward toward the approaching motorcar. Witness Atherton, a member of the section crew riding on the motorcar, testified that he did not see the switch target as they approached, and was not aware that the switch was turned against them. He stated that if any of the crew had seen that the switch was open the motorcar would have been stopped and lifted around the switch. He said: 'We was looking at the work train, and we run off of the open switch about 33 feet.' The motorcar could have been stopped in about half a rail length, or approximately 16 feet.

"After the motorcar left the track, it bumped along over the ties and threw all the men off, except the foreman. Deceased was thrown down between the tracks and seriously injured. Members of the crew carried him to a car in which he was taken to Wakenda. His condition became worse, and he was taken to a hospital, where he died in the early afternoon of the same day."

The record before us is in harmony with the foregoing statement of facts.

The Supreme Court, in ruling the case, (l. c. 1008, 1009 of 73 S. W. (2d) ) said:

"A careful study of the record in this case fails to disclose any evidence whatever that decedent actually knew that the switch was open. Neither can we say as a matter of law, in the light of the federal rule on assumption of risk, that he appreciated the danger, or that it was so plainly observable that he must be presumed to have known it. The railway company's rule 104 contained the following requirement: 'A switch must not be left open for a following train unless in charge of a trainman of such train.' The conductor of the work train testified that earlier that morning he had left a

flagman at the station about a half mile west of this switch to protect his crew from trains coming from that direction. The evidence is far from conclusive that decedent either saw him or knew of his presence there. Moreover, this flagman was obviously not in charge of this switch, because the evidence shows that it was being operated by the conductor of the work train, and there was no evidence that the flagman at the station even knew that this switch was open when some of the crew observed him approaching them from the east as they started for the work train from their place of work west of the depot. He was then a half mile or more west of the switch in question and was apparently in charge of the switches leading from the main track to the south passing track. If, as counsel for appellant contend, the decedent by reason of his long service there was familiar with the location of the switches and the rules and customs governing their operation and care, absence of a trainman in charge of the switch at the east end of the north passing track together with the switch condition encountered by the crew in going from the south passing track onto the main track would tend to allay any apprehension that deceased might otherwise have had of the existence of an open switch ahead blocking the main line. It appears that the conductor who actually had charge of opening and closing this switch never saw the motorcar and did not learn of its derailment until his return to the station about noon, although he admitted that he left the switch open when, just prior to this accident, the work train was pulled from the north passing track onto the main line after another train had passed over the main line. In this situation deceased's attention was apparently fixed on the danger attending the approach of the work train. He had a right to rely upon the exercise of ordinary care on the part of the foreman, who was operating the motorcar and facing the switch target, to discover and act upon this signal of danger in time to avoid derailment. It was for the jury to say whether or not he assumed the risk.''

2.—It thus, by its statement of facts and its rulings thereon, disposed of all of the evidence before it, including that of the witnesses Harrington and Atherton, which appears in the record on this appeal, which supports its findings of fact and rulings and is altogether sufficient therefor. Its rulings on such facts are in harmony with the federal act and the interpretations thereof by the federal courts. There is in the record on this appeal some additional oral evidence by the witness Harrington, but it is not of a character to vary or contradict his evidence in the record on the appeal to the Supreme Court. Under such circumstances, this court is bound on this appeal by the findings of fact upon the evidence made by the Supreme Court on the appeal to it, its application of the law thereto, and its rulings thereon as to all of the matters determined therein. The

pleadings on this appeal are the same as those on the appeal to the Supreme Court. There is sufficient of the same evidence in this appeal as appears in that appeal for the support of the findings of fact made therein and the conclusions of law and rulings made thereon. In such a situation, the decision on the former appeal is the law of the case as to all matters therein decided and must be so treated by us. [Lober v. Kansas City (Mo.), 100 S. W. (2d) 267.]

3.—It is, nevertheless, contended by the defendant that the Supreme Court erroneously so applied incorrect principles of law and made such a grievous mistake in its findings of fact and its rulings thereon that its decision cannot be rightly adhered to as the law of the case. We do not so find.

However, we are without jurisdiction to correct any errors it may have made, if any, or to find the facts differently from what it found them or to declare the law differently from what it was declared to be by it in such case. [State ex rel. Curtis v. Broaddus, 238 Mo. 189, 142 S. W. 340.]

Its decision is the law of the case as to all matters passed upon therein, which must be followed by this court on a subsequent appeal. [May v. Crawford, 150 Mo. 504, 51 S. W. 693; State ex rel. Curtis v. Broaddus, supra.]

In the case of State ex rel. Curtis v. Broaddus, supra, it was said (l. c. 342 of 142 S. W.):

". . . It has never, so far as we are advised, been contended in this court that when this court has declared the law upon a given state of facts a court of appeals is at liberty, upon the same facts, in the same case, if it shall come before that court through subsequent proceedings, to refuse to follow the opinion of this court. A decision by this court upon a point presented in a case becomes the law of the case upon that point. It is the nature of *res adjudicata* upon that question. In further proceedings in the same case before a court of appeals, the prior decision of this court must be followed, when the same point is presented upon the same facts. If that court attempts to disregard the decision of this court upon such point, it exceeds its jurisdiction."

In that case, the court approvingly quoted from the case of the Missouri, K. & P. R. Co. v. Smith, 154 Mo. 300, l. c. 308, 55 S. W. 470, and proceeded as follows (142 S. W., l c. 342 and again at l. c. 349, from the separate opinion of Judge Ferris):

"This court has many times decided that a decision by the Supreme Court upon a point becomes the law of the case upon that point and is controlling upon further proceedings in that case in the lower court, and also that, with rate exceptions, such decisions will bind this court upon a second appeal upon the same point."

It was further said in that case (142 S. W., l. c. 342 and again at

l. c. 349, 350, from the separate opinion of Judge Ferris, approved by the majority opinion) :

"It will be perceived, however, that while this court reserves, as it must, the right to re-examine its former decision in the same case, upon the same state of facts, that right is not accorded to the lower court. If this court makes a mistake, either as to the law or the facts of the case, as may happen, inasmuch as the court is composed of human judges, it has the power—fortunate that it is so—to correct that mistake by reversing itself on a second appeal; but it by no means follows that the trial court or the Court of Appeals has the same right in this regard. When a point, once decided by this court, comes before either the circuit court or the Court of Appeals on further proceedings in the same case, neither of the courts last named has jurisdiction to overrule this court. Here the question is different from that presented in the case of State ex rel. v. Smith, supra, where the superintending power of this court was invoked on the Court of Appeals, because that court refused to follow a prior decision of this court in other cases. Here the question is as to the duty of that court to follow the prior decision of this court in the same case. It becomes, not a question of whether that court is right or wrong in its construction of the decision of this court, but whether that court is within its lawful jurisdiction, if it disregards the law of the case as previously declared by this court.''

And so it is here. The question is as to our duty to accept as the law of the case the prior decision of the Supreme Court on the former appeal made to it in the appeal now before us. It is not a question with respect to our duty to follow as the law its decisions in other cases, but with respect to our duty alone to follow and accept as the law of this case its prior decision in this same case.

It is in accordance with fundamental principles of law universally recognized and applied that, in any case, a prior decision by an appellate court becomes the law of that case, with rare exceptions, and must be recognized as such in all subsequent proceedings had therein in the lower courts and, with rare exceptions, in the appellate court itself which rendered such decision upon a subsequent appeal to it upon the same point. [Missouri, K. & T. R. Co. v. Smith, supra.]

It was said by the Supreme Court of this State in the case of May v. Crawford, supra, 150 Mo. 504, l. c. 524, 51 S. W. 698, 699, quoting Wells, *Res Judicata* and *Stare Decisis*, section 613:

" 'A previous ruling by the appellate court upon a point distinctly made may be only authority in other cases, to be followed or affirmed, or to be modified or overruled, according to its intrinsic merits. But in the case in which it is made, it is more than authority; it is a final adjudication . . .' "

In commenting upon such rule, it was therein further said by the court, l. c. 525 of 150 Mo. and l. c. 699 of 51 S. W.:

"This rule is necessary to the orderly and decent administration of the law, for it would destroy all respect for the law, and make judgments of courts of final resort mere mockeries and travesties, if the trial court could be permitted, on a trial anew in that court, to set aside, disregard, or disobey them."

What was said in the above quoted case with reference to the trial court's setting aside, disregarding, or disobeying the judgment of an appellate court applies equally to this court in a case which has been determined by the Supreme Court and which, upon a reversal and remand thereof, is retried in the lower court and thereafter reaches this court upon an appeal. In this same case, if we should disregard its judgment and decision on the former appeal, it would be to make its judgment a mere mockery and to bring the administration of the law into disrepute.

In Wells on *Res Judicata* and *Stare Decisis,* section 613, it is said:

"It is a settled principle that the questions of law decided on appeal to a court of ultimate resort, must govern the case in the same court, and the trial court, through all subsequent stages of the proceedings, and will seldom be reconsidered, or reversed, even if they appear to have been erroneous."

In Gracey v. St. Louis, 221 Mo. 1, l. c. 5 and 6, it is said:

". . . On a second appeal or writ of error on the same facts and pleadings the appellate court will not notice questions determined in the previous decision. All such are *res judicata* and closed. For the practical administration of justice, the former decision is the law of the case."—citing numerous authorities.

"Like all general rules, the one in hand has its exceptions. Where manifest and far-reaching error has been committed, no castiron or immutable rule bars a re-examination of a question illy decided. In such case it goes without saying that this court, as a debt due to justice and as one of the foundation stones of its own dignity, reserves to itself the right to reconsider, re-examine and redetermine."

It will be noticed that the reservation is to the appellate court which first determines the case and not to any other court. There are innumerable authorities to the same effect as those cited and quoted. It is unnecessary here to refer to them further. If it be true then that the law as declared by the appellate court upon the first appeal is the law of the case, we have no alternative but to accept it as such.

4.—That the suit in the instant case is one arising under the Federal Employers' Liability Act becomes immaterial. The rule, nevertheless, applies, not as a mere matter of state law, but as a fundamental principle of procedure recognized and enforced in all jurisdic-

tions. It is not a question of whether we should follow the decisions of the state courts or the decisions of the federal courts; but the question is whether the decision of the appellate court made upon a former appeal in the same case becomes the law of the case in all proceedings thereafter had, irrespective of whether such appellate court is a state court or a federal court.

The concrete case in hand has been reviewed and passed upon by the Supreme Court of this State upon an appeal thereto. The facts have been found and determined by it. In passing upon the case and in rendering its decision therein, it has construed the federal act in the light of the interpretation given the provisions of such act by the federal courts as they relate to the rights and obligations of the parties and has applied such act and such interpretation as construed by it to the facts as found. Such court properly construed such act and the interpretation of the federal courts as applied thereto and properly applied such act and such interpretation to the facts as found.

Its decision upon such appeal is the law of the case as to all matters decided therein and is binding, under the general rules of procedure, upon the trial court to which the cause was remanded in all proceedings thereafter had therein and upon this court on this subsequent appeal and upon the Supreme Court itself, except that the Supreme Court might, upon a second appeal to it, reexamine any question found to have been illy decided by it, if so, upon the former appeal and correct any manifest error in its former decision in order to avoid injustice; but this court is without jurisdiction, under the laws of this state or any general law, to make a different finding of fact upon this practically same record in this, the same, case. This court has no jurisdiction to give a different construction in this same case to the provisions of the Federal Employers' Liability Act, as to the rights and obligations of the parties or the construction given the interpretation, by the federal courts of. the provisions of such act applied or which should be applied in their rulings, than that given by the Supreme Court of this state.

In other words, where a concrete case has been passed upon by the Supreme Court of this state upon a former appeal, its decision is the law of the case as to all matters passed upon therein and must be so considered by this court upon a subsequent appeal, regardless of the statute under which it is brought, whether state or federal. This is true as a matter of law and procedure. A previous ruling made by the Supreme Court in any given case is a final adjudication, which we have no jurisdiction to disregard when the same case comes before us on a subsequent appeal. That this is true under the law of Missouri has been repeatedly decided. This was expressly decided in State ex rel. Curtis v. Broaddus, supra.

We are not supplied with such jurisdiction by the Federal Employers' Liability Act.

5.—While it is true that, in any given case arising under the Federal Employers' Liability Act reaching this court upon a first appeal therein, involving questions which have not previously been determined by the Supreme Court of this state upon appeal thereto in the same case as to the construction and the application of the provisions of the Federal Employers' Liability Act, we have a free hand in construing said act and the interpretation given such act by the federal courts and should conform thereto rather than to the opinions of the Supreme Court of this state in other cases—yet, we have no such right where such act and its interpretation by the federal courts have been construed and passed upon by the Supreme Court of this state in the same case. In such case, we are bound by the principles of general law, generally accepted and enforced, to accept as the law of the case what the Supreme Court has said with reference to the construction of the federal act and its construction of the interpretation by the federal courts of such act.

No such question was involved in the case of Chesapeake & O. Ry. Co. v. Kuhn, 52 S. Ct. 45, 284 U. S. 44. The opinion in that case can only be construed as holding that it was the duty of Courts of Appeals to follow the views of the Supreme Court of the United States with respect to questions arising under the federal act, rather than the views of the Supreme Court of the state expressed in other cases than the one in hand. It did not have before it a case wherein the views of the Supreme Court of the state had been expressed upon an appeal thereto, prior to the appeal therein to the Court of Appeals; and what was said therein cannot be made to apply to such a situation.

6.—While we do not have before us the entire record of this case upon the appeal to the Supreme Court, we do have sufficient thereof to show, upon comparison with the record on this appeal, that the Supreme Court's decision therein is grounded upon practically the same facts as are found in evidence on this appeal.

The evidence of witnesses Harrington and Atherton, preserved in the bill of exceptions upon the appeal to the Supreme Court, was introduced and read in this case from such bill of exceptions and is therefore necessarily the same in both records.

The statement of facts in the opinion of the Supreme Court upon the prior appeal is based on the record therein and is fully justified and supported by the evidence of such witnesses. The testimony of other witnesses contradictory to the testimony of such witnesses (if such there were) was necessarily disposed of by the Supreme Court in its statement adversely to the testimony of such other witnesses. That court must be held to have accepted the testimony of

witnesses Harrington and Atherton as the true testimony in the case and to have ruled the case thereon. We are bound by its findings of fact and rulings thereon on this appeal. The testimony of such witnesses in this case is conclusive of the liability of the defendant and the right of recovery of the plaintiff.

There is no contention by the defendant that the record here is different from the record on the appeal to the Supreme Court, in any material or essential respect; and no material difference is pointed out by it.

Instead, it contents iself with seeking to impeach the statement of facts of the Supreme Court by asserting that such statement is erroneous and is unsupported by the evidence in the record and was made in disregard of evidence in the record.

If such be true, such matters could be corrected only by the Supreme Court itself upon another appeal to it. This court has no right to correct such matters or to make any different findings of fact from those originally made by the Supreme Court. We are bound by the statement as made by the Supreme Court and the rulings it made thereon, as a matter of law, and cannot correct errors therein, if any, however patent.

The only matter we might determine is whether the record herein is practically the same or substantially different from the record on the former appeal. This case herein was tried largely on the record on the former appeal. There are some slight variations, as there is some oral testimony in this case which was not offered on the former trial. The witness Harrington, in addition to his evidence preserved in the bill of exceptions, was called as a witness by the defendant for cross-examination upon this appeal and orally testified on such examination. There is no denial by him, however, of his former testimony. Neither is his evidence such, on cross-examination, as to furnish any contradiction of his former testimony. Neither is there any other evidence on this trial which contradicts or impeaches the evidence of either Harrington or Atherton upon the former trial. The pleadings are the same, and the evidence is practically the same.

7.—Until the judgment of the Supreme Court upon the former appeal in this case is reversed upon appeal or writ of error or is quashed upon *certiorari* or is set aside by it on some subsequent appeal thereto, it is the law of this case, based upon .its construction of the interpretation placed by the federal courts upon the federal act, which we must recognize.

That it wrongfully construed the federal act and wrongfully construed the interpretation of such act by the federal courts and the principles to be applied to the facts found by it, if so, is outside the issues. It must be assumed, so long as such judgment stands, that

it rightly interprets and rightly construes the federal act and properly construes the interpretations of the federal courts placed thereon.

In Lober v. Kansas City, supra, 100 S. W. (2d) 267, l. c. 268, the Missouri Supreme Court, Division 1, said:

"The pleadings and evidence in the instant case are substantially the same as those on the former appeal. A comparison of the record and briefs on the former appeal with those on the present appeal shows that no new issue is presented for decision. In this situation the decision on the former appeal is the law of the case."

8.—The law of this case being the law as declared by the Supreme Court upon the appeal thereto as to all matters determined therein, many of the defendant's assignments of error and points made herein are concluded by what was said therein.

9.—It was determined by the opinion on such former appeal that whether the deceased herein assumed the risk and whether or not he was negligent were questions, under the evidence, for the jury. Such questions, under practically the same evidence, in the instant case were submitted to the jury; and the verdict of the jury thereon was for the plaintiff. There was ample evidence for such submission.

10.—The defendant contends upon this appeal that the trial court erred in refusing to give its requested instruction in the nature of a demurrer to the evidence at the close of all of the evidence (1) because, as it contends, the deceased assumed the risk; (2) because, as it contends, the deceased was killed as a direct and proximate result of his own negligence; (3) because the evidence, as it contends, failed to prove that the death of the deceased was a direct result of the negligence of the section foreman in failing to look ahead; and (4) because, as it contends, the court found, upon the first trial, that the derailment of the motorcar and the death of the deceased were not caused by the negligence of the section foreman. This contention and all of the grounds upon which it is based are foreclosed by the opinion of the Supreme Court upon the former appeal, upon substantially the same evidence as is found in the record on this appeal. There was no error on the part of the trial court in refusing to give the defendant's requested instruction in the nature of a demurrer. It was properly refused, and the case was properly submitted.

11.—The defendant's second point on this appeal, that the injury and death of the deceased were the direct and proximate result of his own carelessness and negligence and that the plaintiff is not entitled to recover even though the defendant might have been negligent, is disposed of by the refusal of the defendant's requested instruction in the nature of a demurrer. Whether or not his in-

jury and death were the direct and proximate result of his own carelessness and negligence was a question for the jury under the evidence in the case.

12.—It is insisted by the defendant that the trial court erred in admitting testimony as to the rate of speed that the motorcar on which the deceased was riding was moving at the time of his injury. Such evidence was clearly competent as part of the *res gestae*. [Maloney v. United Rys. Co. of St. Louis (Mo.), 237 S. W. 509; Grubb v. Kansas City Rys. Co., 207 Mo. App. 16, 230 S. W. 675; Muller v. Harvey, 199 Mo. App. 627, 204 S. W. 926.] Moreover, it appears that the defendant brought out in the testimony of its witness Lovell that the motorcar was being driven at about ten miles per hour.

13.—It is contended by the defendant that the court erred upon the present trial in admitting in evidence the defendant's rule 104. Such contention is disposed of by what was said in the opinion in the former appeal, to the effect that such rule was properly admitted in that trial as bearing upon the issues of the deceased's negligence and his assumption of risk. The same is true in the present trial.

14.—The defendant contends that, the defendant's motorman (Lovell) having been found not negligent and having been dismissed from the first trial by reason of a peremptory instruction given in his favor by the trial court, the defendant is not liable and stands discharged and that its demurrer should have been given in this case for that reason.

However, the defendant is in no position here to make such claim because it asked upon this trial—and the court gave—its instruction D-21, which recognized the jury's right to determine the defendant's liability for Lovell's negligence in operating the said motorcar, as follows:

"The court instructs the jury that the plaintiff's claim for damages is based upon alleged negligence of defendant's employee and the plaintiff is not entitled to recover unless he has proved to your satisfaction by the evidence that defendant's employee was negligent as submitted in other instructions. And the court instructs you that the words 'negligent' and 'negligence,' as used in all the instructions in this case, means the failure to use such care as a person of ordinary prudence would use under the same or similar circumstances."

It was so held by the Supreme Court in the opinion on the former appeal wherein the defendant, after the giving of the peremptory instruction in Lovell's favor, asked and was given practically the same instruction upon the first trial. Moreover, the fact that the defendant's motorman (Lovell) was discharged in the first trial is not pleaded in bar of the suit against the defendant in the answer of the defendant herein; and such contention is not available to it. The

fact that the trial court gave a peremptory instruction in Lovell's favor upon the first trial amounted, at most, to a mere involuntary nonsuit and was not a judgment upon the merits, furnishing any basis for the plea of *res adjudicata*.

15.—Not only was the assumption of risk by the deceased properly submitted upon the trial in the instant case, under the Supreme Court opinion upon the former appeal; but his assumption of the extraordinary risk of negligence of the foreman (Lovell) was properly submitted.

16.—The defendant complains of the plaintiff's instruction P-1 for the alleged reason that it was broader than the pleadings and the evidence and that it submitted the plaintiff's case on the issue of general negligence.

Such instruction is not open to such objection. It was within the pleadings and within the evidence. The negligence submitted was within that alleged in the petition. The defendant's contention that such instruction does not submit the negligent failure of the defendant's foreman (Lovell) to see the open switch is without merit. Such instruction required the jury to find "that while thus in transit, if you so find, said foreman propelled said motor car into an open switch on said main line track, thereby causing derailment of said motor car at the point of said switch—and that plaintiff's decedent, as a direct result of said occurrence, was thrown from said motor car—and that the conduct of the defendant, as above narrated, if you so find, was negligent—then your verdict shall be for the plaintiff, etc." Defendant's instruction No. 21 instructed the jury to find that "the plaintiff is not entitled to recover unless he has proved to your satisfaction by the evidence that defendant's employee was negligent as submitted in other instructions." Furthermore, defendant's instruction No. 24 advised the jury that "if you find and believe from the evidence that Wilbur Jenkins was not using ordinary care and exercising ordinary prudence at the time and place of his injury, and that the failure to use such care and prudence was the sole cause of the injury which resulted in his death, then you will find for the defendant." These instructions are to be read and considered together as a single charge. [Elstroth v. Karrenbrock (Mo. App.), 285 S. W. 525.] When so read, it is apparent that the jury must have understood that it could return a verdict for the plaintiff only in case that it found the defendant's foreman negligent in the matters specified. If the foreman was negligent under the Federal Employers' Liability Act, it is immaterial whether other fellow servants or the deceased was also negligent. [Derrington v. Southern R. Co., 328 Mo. 283, 40 S. W. (2d) 1069; Southern R. Co. v. Derrington, 52 S. Ct. 37.]

17.—Instruction P-2 for the plaintiff, complained of by the de-

fendant, was, after having been given and read to the jury, withdrawn by the plaintiff, after the defendant had concluded its argument but before the plaintiff had concluded his final argument; and the jury was advised by the court of such withdrawal. The record shows that the defendant was given an opportunity to discuss the situation thus created before the jury but declined to do so. Under such circumstances, there was no reversible error committed in the giving and the withdrawal of such instruction. [Wells v. Wilson (Mo.), 293 S. W. 127; Blashfield's Instructions Juries (2 Ed.), vol. 1, section 226; Carroll v. Wiggains (Mo. App.), 199 S. W. 280.]

18.—Instruction P-1 for the plaintiff was not erroneous, as contended by the defendant, in directing the jury to find for the plaintiff if it found, among other things, that the deceased did not knowingly assume the risk of the defendant's conduct under the law as declared in the opinion of the Supreme Court upon the former appeal. It was there held, in disposing of the same in that case, that it was proper and that, if the defendant had desired the jury more comprehensively instructed, it should have presented such a request in proper form and that, having failed to do so, it is not now in any position to complain of the instruction given. The same is true here. The defendant's contention is disposed of by what was said by the Supreme Court in its opinion.

19.—The defendant complains of the refusal of its instruction D-13. Such instruction was erroneous in telling the jury, in effect, that the deceased should have been on the lookout for extraordinary risks. Under the law, as declared in the opinion of the Supreme Court, it was properly refused.

20.—The defendant complains of the refusal of its instructions D-8, D-14, and D-15, to the effect that there was no evidence that the defendant's rule 104 was made for the purpose of protecting motorcars or sectionmen riding thereon and that the jury was not authorized to find a verdict in favor of the plaintiff on the ground of the alleged violation of such rule. Such rule was properly admitted as bearing upon the issues of the deceased's negligence and assumption of risks, and such instructions were properly refused. It was so determined in the former appeal to the Supreme Court.

21.—The point made by the defendant that there was error in the admission of evidence of the speed of the car in which the deceased was riding at the time of his injury and that such car traveled from 27 to 33 feet after running into the open switch is not supported by any objection shown to have been made to such evidence at the time that it was offered or by any reference to the record, where it might be found that it was offered and admitted. Such point is not therefore properly preserved for review by us.

22.—The defendant complains of error in the refusal of its in-

structions D-9, D-10, and D-11, submitting to the jury the defense that the deceased's death was the proximate result of his own negligence. These instructions were properly refused because the court had already given the defendant's instruction D-25, covering the same point. [State ex rel. St. Louis Public Service Co. v. Haid, 333 Mo. 845, 63 S. W. (2d) 15; Homan v. Missouri Pac. R. Co., 335 Mo. 30, 70 S. W. (2d) 869.]

23.—The defendant complains that the plaintiff's instruction P-3 was erroneous in failing to give the jury any basis or standard by which to determine the expectancy of life of the mother of the deceased or the present value of any pecuniary loss sustained by her; that it was a roving commission, which permitted the jury to adopt any method it might devise of fixing the pecuniary loss and finding the present cash value thereof and produced an excessive and unreasonable verdict; and that it failed to limit the finding to the pecuniary loss sustained.

The instruction in question told the jury that, in the event that it found for the plaintiff, it would fix the damages at such sum that, it should find and believe from the evidence, would fairly and reasonably represent the present cash value of such pecuniary advantages as support and maintenance and the pecuniary value of such services, care, attention, and assistance as the jury should find and believe from the evidence that the mother, Mary Jenkins, would have received, if any, from the deceased during his lifetime had he lived; that, in fixing such damages and in arriving at the present cash value thereof, the jury would take into consideration the age, probable expectancy of life, health, physical condition, habits, and earning power of the deceased and the age and the probable expectancy of life of the mother and the pecuniary value of such service, care, attention, and assistance as it should find and believe from the evidence the deceased would have given or rendered to her during his life had he lived and during her life; that it should take into consideration the reasonable rates of interest which it might find and believe from the evidence that persons of the age and the experience of the mother of the deceased might reasonably expect to derive from the investment of money so awarded, if any, in reasonably safe securities; and that its whole award should not exceed the present cash value of the actual pecuniary loss sustained by said mother as therein set out.

It thus appears that the jury was limited to the award of the actual pecuniary loss, if any, sustained by the mother.

All the matters submitted were to be determined by the **jury** from the evidence before it. It was for the jury to determine what services, care, attention, and assistance the deceased rendered his mother and would have rendered her had he lived and the pecuniary

or money value thereof. [Wise v. Rudenstein (Mo. App.), 24 S. W. (2d) 203.] The jury had before it the evidence as to the ages of both the deceased and his mother; the evidence as to the earning capacity of the deceased; the evidence as to the contributions made by him to her for support and maintenance; and the evidence as to the services rendered her and the care, attention, and assistance given her by him. It was for the jury, from all such and other evidence in the record, to determine the damages which the mother sustained by reason of the death of the deceased and their present cash value. The judge, as well as the jury, is presumed to know of the value of such services as care, assistance, and attention given by one to another. [Murray v. Missouri Pac. R. Co., 101 Mo. 236, 13 S. W. 817.] Detailed evidence of such value is not required. From the age of the deceased, his health, his physical condition, and his habits, the jury could estimate his probable expectancy of life. Likewise, from the age, the physical condition, the health, and the habits of his mother, it could arrive at her probable expectancy of life.

We are unable to see wherein such instruction was erroneous or wherein it was a mere roving commission.

24.—The issue as to the assumption of risk by the deceased was properly submitted to the jury by the plaintiff's instruction P-1. The negligence of the section foreman (Lovell) was properly submitted by such instruction.

25.—We come now to a consideration of the defendant's points 11 and 12, relating to the statements and argument of the plaintiff's counsel and to the excessiveness of the verdict of the jury, neither of which was involved in the former appeal.

The defendant in its brief complains of the statement by the plaintiff's counsel in his opening statement to the jury to the effect that the Jenkins family consisted of the deceased (Wilbur Jenkins)—"the breadwinner"—and his mother and a crippled brother, who had been a cripple since he was nine months old. Upon objection to such statement in the trial court, the plaintiff's counsel explained that he was not asking anything for the crippled brother; and he was permitted to proceed with the admonition from the court that he should not refer to the brother of the deceased as crippled. The plaintiff's counsel then explained that his purpose was to show the dependence of the mother upon the deceased and the value of his services to her, in that the crippled brother could not do for the mother what the deceased brother did. It was interpolated by another of the plaintiff's counsel at this point that the crippled boy was not entitled to recover but that it was necessary to show what became of the deceased's earnings and that all such earnings went to the support of the mother's family. We do not consider that such statements were unwarranted. The plaintiff had the right to show

the necessities of the mother, her dependent condition, and her just demands upon the deceased. That such statements were prejudicial is not reflected in the verdict of the jury, which was for $7,500, a moderate sum considering the evidence in the record upon which it was based. There is no apparent abuse of discretion by the court in its action in refusing the defendant's motion to discharge the jury on account thereof.

Likewise, we fail to find any prejudice in the statement of the plaintiff's counsel to the effect that the deceased, Wilbur Jenkins, was efficient enough for the defendant to continue him on its payroll for 28 years and until it took his life away in June, 1929. The evidence shows that the deceased was in the employ of the defendant for 28 years and upon its payroll for that length of time and until his death in 1929. That his life was taken away by the defendant was merely the manner in which the plaintiff's counsel accounted for his death. There was no occasion to discharge the jury on account of such remarks. That they were prejudicial is not reflected in the verdict of the jury.

26.—The defendant further registers a complaint against the statements of the plaintiff's counsel to the effect that the deceased provided for his mother; that there were three in the family; that he provided for that group with his average earnings; that he kept this group together; that he was the first one up in the morning; and that he made the fires and split the kindling wood. The evidence shows such to have been facts. Upon objection to such remarks, he called the attention of the court to the Moran Case and stated that the verdict in that case was $30,000. It must be kept in mind, however, that such statement calling attention to the Moran Case and the amount of the verdict therein was provoked by the objection of the defendant's counsel and was made to the court and not to the jury, in an effort to meet the objection of the defendant. True, it was made in the presence of the jury; but that the jury was prejudiced thereby is not reflected by the verdict in this case. The court did not abuse its discretion in refusing the defendant's motion to discharge the jury on account of such remarks.

27.—The defendant complains that the plaintiff's counsel stated in great detail the personal attentions of the deceased to his mother. Just what was stated in such connection is not set out or shown. There is, therefore, nothing for us to review in such point.

28.—The defendant next complains of the further argument of the plaintiff's counsel to the jury in which he said, "It isn't a difficult thing, gentlemen, for those who have the wrong side, who have brought about the death of a human being to put words into the mouth of that slumbering creature who lies in the tomb and who cannot raise himself to cry out against the lies and false statements."

The exact connection in which these remarks were made and what, if any, lies and false statements furnished provocation therefor are not made to appear; and we have no grounds on which to determine whether the defendant's objections thereto are well made or not. So far as shown by the record, there is no error apparent of an abuse by the court of its discretion in overruling the defendant's motion to discharge the jury on account thereof. It is nowhere shown that such argument had any prejudicial effect on the jury.

29.—The defendant complains again that the plaintiff's counsel in his closing argument made repeated prejudicial and inflammatory statements calculated and intended to arouse sympathy for the plaintiff and prejudice against the defendant which undoubtedly influenced the jury and prevented a fair and impartial trial.

In the absence of setting out the said remarks and statements made by the plaintiff's counsel, complained of, there is nothing for us to pass upon. The point as made by the defendant is a mere assertion of a bald conclusion upon its part. We have nothing from which we may know what was, in fact, said and from which to determine whether it was inflammatory and calculated to be prejudicial in its effect upon the jury.

We recognize the rule that, under the federal statute, no verdict can be permitted to stand which is found to be in any degree the result of appeals to passion and prejudice; but the verdict in this case appears to be based upon a fair consideration by the jury of the evidence in the record, uninfluenced by passion or prejudice or any appeal thereto.

30.—The defendant makes the points that the verdict is excessive and that it is the result of passion, sympathy, and prejudice, incited by improper and prejudicial argument and statements of the plaintiff's counsel; but it is not so shown. It is neither pointed out nor shown wherein it is excessive or wherein it is the result of passion and prejudice or any appeal thereto by the plaintiffs counsel. Upon the other hand, a careful examination of the evidence in the record shows that it fully supports such verdict and that such verdict is the result of the fair and impartial consideration of such evidence by the jury and reflects the impartial judgment of the jury thereon.

31.—The thirteenth point made by the defendant is as follows:

"The court erred in admitting over defendant's objections the opening statement of counsel for plaintiff and the evidence relating to care, attention, assistance, companionship, and society of the deceased toward his mother, and in giving to the jury plaintiff's Instruction P-3 requiring the jury to award damages for the same. They are not capable of being measured by material standards or of

being reduced to pecuniary valuation and are not proper elements of damage under the Federal Employers' Liability Act.''

The evidence as to the care, attention, and assistance rendered by the deceased to his mother was properly admitted and was also a proper matter for comment by the plaintiff's counsel. They were proper elements of damages to be recovered. All of such acts had a pecuniary or money value capable of being measured and ascertained by some definite standards, based on a view of the peculiar facts in evidence. [Norfolk & Western Ry. Co. v. Holbrook, 235 U. S. 625; Michigan Central Rr. Co. v. Vreeland, 227 U. S. 59; Stejskal v. Darrow (N. D.), 215 N. W. 83.]

32.—The plaintiff's instruction P-3 is not open to the complaint as made. It did not submit any question of the companionship and society of the deceased. It did submit the care, attention, and assistance given his mother by the deceased as matters for the consideration of the jury in determining the damages to be assessed, if any, and properly so. [Norfolk & Western Ry. Co. v. Holbrook, supra; Michigan Central Rr. Co. v. Vreeland, supra.]

The comments by the plaintiff's counsel upon the deceased's companionship with his mother or the society he shared with her, complained of by the defendant, are not specifically set out by the plaintiff; nor do we have any place in the record pointed out where we might find such comments. Neither is it pointed out at what place in the record it may be found that there was any evidence offered or admitted as to the companionship and society of the deceased enjoyed by his mother or what particular evidence, if any, of such nature is complained of. The plaintiff in his petition did not seek to recover on any loss of the deceased's companionship or society suffered by his mother as an element of damages and was not permitted to recover thereon. Instruction P-3 was the only instruction given by the plaintiff relating to the measure of damages; and it restricted the elements of damage to those of support and maintenance and of service, care, attention, and assistance rendered by the deceased to his mother.

The judgment of the trial court should be and is affirmed. All concur.