**HOMEBUILDERS ASSOCIATION OF GREATER KANSAS CITY et al., Plaintiffs-Respondents,**

v.

**KANSAS CITY, Missouri, Defendant-Appellant.**

No. 53693.

Supreme Court of Missouri, En Banc.

Sept. 9, 1968.

Kenneth M. Myers, James E. Grier, Kansas City, for respondents, Brewer & Myers, Kansas City, of counsel.

Herbert C. Hoffman, City Counselor, Carrol C. Kennett, Assoc. City Counselor, Kansas City, for appellant.

FINCH, Judge.

This is an appeal by Kansas City, defendant herein, from an adverse judgment by the Circuit Court on the first three counts of a declaratory judgment action involving contracts between the city and various contractors or builders or their assignees for extension of water mains of the city water system of Kansas City.

The petition contained twenty-one counts, but the court's judgment decided only the first three counts.[1] An order was made pursuant to Supreme Court Rule 82.06, V.A.M.R., that the judgment on the first three counts was designated as a final judgment for purposes of appeal under § 512.-020.[2] Action on Counts IV through XXI was reserved pending disposition of this appeal. This procedure is permissible. State ex rel. State Highway Commission v. Hammel, Mo., 290 S.W.2d 113 [10].

The question presented is whether ninety-four contracts entered into by plaintiffs or their assigns and Kansas City, by its director of the water department, are valid and enforceable obligations. These contracts covered extension of water mains for which plaintiffs furnished the money and were to receive a refund of their advances in the manner and from the source specified in the various contracts.

Count I involves contracts executed prior to June 20, 1958. Count II involves contracts executed between June 20, 1958, and April 13, 1962. Count III involves contracts executed subsequent to April 13, 1962. Each count sought a declaration that the contracts involved therein are valid and enforceable and that the plaintiffs are entitled to refunds thereunder. Refunds claimed on Count III alone total $541,499.24, less refunds received of $86,789.08, which gives us jurisdiction.

Kansas City is a constitutional charter city. Such cities are authorized by § 91.600 to own and operate a waterworks system. Kansas City provided for such a system in its charter. The charter sections dealing therewith, and with which we are concerned, are as follows:

"Sec. 44. *Powers and duties.* The director of the water department shall be a person trained and experienced in the operation and management of public utilities. He shall have power to lay water pipes and equipment along streets, public highways, alleys or parts thereof, or other places, and to supply water and other services to the city, its inhabitants or to any person, firm or corporation within or without the corporate limits of the city, or within or without the State of Missouri, under such terms and conditions as may be prescribed by ordinance. The council shall prescribe and the director of the water department shall enforce just and reasonable rules and regulations, methods and practices, governing the furnishing of water service and the collection of all charges therefor.

"Sec. 45. *Extension of mains.* The council may, upon recommendation of the director of the water department, establish such rules regarding the extension of water mains as will insure the greatest benefit to the city. Whenever just and reasonable, property owners may be required to make adequate guarantees or to pay such sums as will cover the cost of unprofitable water main extensions."

"Sec. 48. *Rates.* It shall be the duty of the council by ordinance, upon recommendation of the director of the water department, from time to time, to fix, establish and alter prices and rates to be paid for the use of

---

1. The other eighteen counts consisted of various other alternative theories of recovery for the contracts involved in the first three counts.

2. All statutory references are to RSMo 1959, V.A.M.S.

water. Water rates shall be so fixed as will produce at least sufficient revenue to pay all operating expenses, the interest on all bonds, issued and outstanding, for waterworks purposes, all maintenance and repair charges, and all costs due to obsolescence or other causes. All revenue and income derived from the waterworks, after paying all operating expenses, all maintenance and repair charges, and all costs due to obsolescence or other causes shall be first applied to payment of interest on bonds, outstanding for waterworks purposes, in so far as may be necessary, and the balance thereof shall go to a sinking fund which shall be established to meet the principal of said bonds, or for enlargements, extensions and betterments as the council may by ordinance provide. If deemed advisable by the council, upon recommendation of the director of the water department, water rates may be so fixed by ordinance as to produce sufficient revenue to pay for all enlargements, extensions and betterments of the works, in addition to all operating expenses, interest on all bonds issued or hereafter to be issued and outstanding for waterworks purposes, and the costs of all maintenance and repairs, and costs due to obsolescence or other causes."

█ The contracts involved in Count I were signed on behalf of the city by the director of the water department. During the period in which these contracts were executed, there was no city ordinance authorizing the director to make such contracts. If he had authority therefor, it must be derived from language in the charter. It will be observed, however, that Sec. 44 of the charter, in prescribing the duties of the director, says that "he shall have power to lay water pipes * * * under such terms and conditions as may be prescribed by ordinance". Again, in Sec. 45 of the charter, it is provided that "the council may, upon recommendation of the director of the water department, establish such rules regarding the extension of water mains as will insure the greatest benefit to the city". Clearly, the charter contemplates

and requires action by the council in the form of an ordinance to authorize the director to contract for the extension of water mains. That authority did not exist when the contracts sued on in Count I were executed. Under the doctrine enunciated in Lively v. Webb City, Mo.App., 106 S.W.2d 517, these contracts were not valid and binding obligations of Kansas City. The trial court erred in holding that the contracts referred to in Count I are valid and enforceable contracts.

The contracts involved in Count II were executed by the director of the water department pursuant to authority given in Ordinance No. 22809, enacted June 20, 1958, and contracts involved in Count III were executed by said director pursuant to authority of Ordinance No. 27276, enacted April 13, 1962. Both ordinances expressly authorized the director to contract for water main extensions. Ordinance No. 22809 required the contracting applicant to deposit with the city an amount equalling the estimated cost of the water main extension, after which the city would construct the extension either by contract or by force account, using its own personnel. Ordinance No. 27276 provided for the same procedure or, in the alternative, permitted the director of the water department, in his discretion, to allow an applicant to construct the water main extension. Under both ordinances the applicant was entitled to a refund of the amount deposited or expended, but both contemplated that the refund payments should come solely from revenue derived from the extensions to be installed. Ordinance No. 22809 and contracts executed thereunder provided for a schedule of repayments but provided that the refunds should be "on account of customers directly connected to any water main extension, and on account of revenue collected from such customers". Ordinance No. 27276 contained a somewhat different schedule for refunds, but contained similar language with respect to the source of the funds therefor. Finally, both ordinances provided that any amount not refunded un-

der the formula within a ten-year period should not be refunded at all.

The contracts referred to in Counts II and III conformed to the ordinances which authorized them, but the city insists that all of these contracts are void and unenforceable because there was no compliance with Sec. 82 of the charter of Kansas City. That section provides, in part, as follows: " * * * No contract or order purporting to impose any financial obligation on the city shall be binding upon the city unless it be in writing and unless there is a balance, otherwise unencumbered, to the credit of the appropriation to which the same is to be charged sufficient to meet the obligation thereby incurred, and unless such contract or order bear the certificate of the director of finance so stating; * * * " Admittedly, none of the contracts in Counts II or III contained a certificate of the director of finance.

The question presented to us is whether the contracts involved in Counts II and III impose a financial obligation on Kansas City of the kind referred to in Sec. 82 of its charter. We have concluded that they do not. The contracts in question provide for refunds to the contracting applicants of the amounts advanced or expended but limit the source of such refunds to revenues derived from customers who connect onto the extension thus installed. The ordinances and the contracts thereunder provide a certain schedule of refund payments, but those payments are to come from the funds derived as above indicated. Thus, reimbursement is contingent upon the availability of funds from the source specified. It is further limited by the provision that any refunds not received under the formula within a ten-year period are not to be made. We have concluded that such contingent rights in the plaintiffs do not impose a financial obligation on Kansas City of the nature referred to in Sec. 82 of its charter.

In the case of State ex rel. Smith v. Mayor, etc., of City of Neosho, 203 Mo. 40, 101 S.W. 99, a writ of mandamus was sought to compel the issuance of city warrants to pay semi-annual installments of $875 each out of a certain fund created by earnings and revenues of a waterworks system derived from payments by private customers. A company had built and operated the waterworks system and eventually a controversy between the company and the City of Neosho was settled by a contract whereby the company sold the system to the City of Neosho. The voters approved and the city issued bonds of $25,000, the proceeds of which were paid to the company under the terms of the contract. It was further provided in the contract that in addition to the $25,000 from the bonds, the company also was to receive $21,000 to be paid in twenty-four semi-annual installments of $875 each. The contract expressly recognized that the city could not become indebted for more than the $25,000 for which bonds were to be issued. Nevertheless, the contention was made by the city that the $21,000 to be paid in semi-annual installments also represented indebtedness of the city, and that said sum, together with the $25,000 bonded indebtedness, exceeded the constitutional debt limit of the city. Judge Lamm discusses indebtedness as contemplated in the constitutional provision and concludes that the parties, in negotiating the contract, did not intend to make the $21,000 a subsisting debt of the city. The seller was willing to limit itself to so much of the income of the waterworks for twelve years as would equal the sum of $21,000, and it looked solely to water service revenue for payment. Such sum could not become a general charge upon the general revenue of the city and was held not to constitute indebtedness so as to fall within the constitutional prohibition.

In Bell v. City of Fayette, 325 Mo. 75, 28 S.W.2d 356, the seller sold a diesel engine to the City of Fayette. The contract provided that seller should be paid solely from savings or earnings produced by the diesel engine. The contention was made that this contract violated the constitutional provision limiting the aggregate

indebtedness of a city and requiring an affirmative two-thirds vote by the voters of a proposed indebtedness exceeding income and revenue for that year. This court held that the amount to be paid seller under said contract constituted a contingent liability payable only from profits resulting from the new diesel engine, that it did not constitute a general liability of the city and was not indebtedness within the constitutional prohibition.

The reasoning of these two cases is applicable here. See also Grossman v. Public Water Supply Dist. No. 1 of Clay County, 339 Mo. 344, 96 S.W.2d 701. We find nothing in the language of Sec. 82 of the Kansas City charter which would cause us to interpret its provisions regarding financial obligations or indebtedness differently than we have construed constitutional provisions of the state relating to limitations on indebtedness of local governments. The rights of plaintiffs under the various contracts involved in Counts II and III are contingent ones payable solely from revenues from the extensions made with the funds advanced pursuant to the particular contracts. They are not unlike the contingent obligations considered by this court in the Neosho and Fayette cases. We hold that such contingent sums are not debts or financial obligations of Kansas City within the provisions of Sec. 82 of that city's charter.

It follows, therefore, that plaintiffs are entitled to a declaratory judgment on Counts II and III that the contracts therein referred to are valid contracts, and that plaintiffs should receive reimbursement thereunder to the extent that funds have become available or may become so during the ten-year period applicable to each contract.

In connection with the declaratory judgment, it should be noted that Sec. 48 of the city charter provides that all revenue from the waterworks must be devoted first to payment of operating expenses, maintenance and repair charges, costs due to obsolescence or other causes, and such sums as are required for interest and principal on bonds. The remainder of such revenue then is available for enlargements and extensions. The contracts here involved fall within this latter category.

■ The provisions of Ordinances 22809 and 27276, and the contracts executed pursuant thereto and which are involved in this suit, do not specifically provide for these deductions from revenue from the extensions before money shall be refunded to plaintiffs, but such ordinances and contracts necessarily are subject to these charter provisions. When they provide for reimbursement from revenue collected from customers who connect with the particular extension, they necessarily refer to that part of such revenue available under the charter provision applicable to such extensions. Plaintiffs cannot be entitled under their contracts to greater reimbursement from the specified water receipts than would be permissible under the charter provision.

Accordingly, the trial court should amend its judgment with reference to Counts II and III to make clear that the reimbursement to which plaintiffs are entitled under their contracts is to be from net revenue from customers connected to the particular extension in accordance with their contracts and the requirements of Sec. 48 of the charter. The judgment should provide that payments from the water fund to plaintiffs are to be made only on that basis. We are unable from the record before us to determine whether payments to plaintiffs to date accord with the views herein expressed, or whether any additional sums are now due, but this can be determined on remand by the trial court.

■ Plaintiffs have filed in this court a motion for assessment of damages under Supreme Court Rule 83.13(d), V.A.M.R., on the theory that the appeal did not involve any debatable questions of fact or law and was taken merely for vexatious delay. We conclude that damages are not justified and the motion is overruled. In

so doing, we do not reach nor decide the question asserted by the city that damages may not be assessed against a municipality under said rule. In that connection, however, attention is called to the recent decision of this court in the case of Chappell v. City of Springfield, Mo., 423 S.W.2d 810, holding that punitive damages could not be assessed against the municipality in that case.

As to Count I, the judgment of the trial court is reversed, but on remand plaintiffs will have the opportunity to try other counts involving these same contracts if they so desire.

The judgment as to Counts II and III in finding the contracts there involved to be valid is affirmed, but the case is remanded as to Counts II and III to permit the trial court to amend its judgment with reference to reimbursement in accordance with the views herein expressed, and to permit the trial court to determine the status of refunds on said contracts and the additional sums, if any, to which plaintiffs are now entitled from defendant's water fund.

All concur.