**HOME BUILDERS ASSOCIATION OF GREATER KANSAS CITY et al., Respondents,**

v.

**KANSAS CITY, Missouri, Appellant.**

No. 54944.

Supreme Court of Missouri, En Banc.

March 8, 1971.

Kenneth M. Myers, James E. Grier, Kansas City, for respondents, Hillix, Brewer & Myers, Kansas City, of counsel.

Aaron A. Wilson, Jr., City Counselor, Carrol C. Kennett, Associate City Counselor, Kansas City, for appellant.

BARDGETT, Judge.

This is the second appeal in this suit for declaratory judgment. Plaintiffs-respondents are the assignees of 89 water-main extension contracts entered into between various contractors and builders, plaintiffs-assignors, and the City of Kansas City through its Director of Water Department. These contracts are the subject matter of Counts II and III of plaintiffs' petition and the question of their validity was the issue on a prior appeal at which time this court held the subject contracts to be valid. Homebuilders Ass'n of Greater Kansas

City v. Kansas City, Mo., 431 S.W.2d 111 (hereafter referred to as Home Builders I).

Counts II and III were remanded to permit the trial court to amend its judgment with reference to reimbursement in accordance with the views expressed therein and to permit the trial court to determine the status of refunds on said contracts and the additional sums, if any, to which plaintiffs were entitled from defendant's water fund.

On retrial the circuit court found in favor of plaintiffs and against defendant on both counts and rendered judgment against defendant in the total sum of $391,909.05. Defendant Kansas City appeals. This court has jurisdiction. The parties will be referred to in accordance with their positions in the court below.

In rendering judgment in the amount stated, the trial court found as fact "That there are sufficient funds available in defendant's water fund to pay the refunds due to plaintiffs"; "That the refunds due to plaintiffs are to be paid from the net revenue available in the City's Water Fund for enlargements, extensions and betterments of the City's water plant as determined and required by Section 48 of the City's Charter"; and that "the issue of the method of computing refunds was not in issue, or raised by either party on appeal of this cause to the Supreme Court of Missouri," referring to Home Builders I.

■ The first question now is whether this court in Home Builders I resolved the question of whether or not the contractors (Home Builders) may look to the water fund *as a whole* less priority items provided for in Sec. 48 of the charter or whether the fund available for refunds is restricted to the revenues produced by customers connected to the particular extensions less the priority items mentioned.

The parties stipulated and the trial court found that "the issue of the method of computing refunds was not in issue, or raised by either party on appeal of this cause to the Supreme Court of Missouri," referring to Home Builders I. Nevertheless, the city here contends that the opinion in Home Builders I limited the fund for payment of refunds to the net revenue derived from customers connected to the particular water main extensions, and the trial court erred in not limiting refunds to such a fund.

In Home Builders I, loc. cit. 115[4], this court held: "Accordingly, the trial court should amend its judgment with reference to Counts II and III to make clear that the reimbursements to which plaintiffs are entitled under their contracts is to be from net revenue from customers connected to the particular extension in accordance with their contracts and the requirements of Sec. 48 of the charter. The judgment should provide that payments from the water fund to plaintiffs are to be made only on that basis."

The issue in Home Builders I was whether or not the contracts were valid since they did not contain the certification required by Sec. 82 of the charter. Home Builders in the prior appeal argued they were valid in the absence of such a certification *because* they were *contingent* obligations.

Home Builders' brief in the prior appeal, page 31, in referring to the type of obligation the contracts involved in Counts II and III imposed, argued:

"In neither case did the City contract to make a payment which would be charged to an appropriation, for any refunds or reimbursements were dependent solely upon revenues from the extensions, and conditions under which the deposits were to be refunded or reimbursements were to be made inured solely to the benefit of the City because, *if the revenue derived from the water main extensions was not sufficient* under the formula established, *after a ten year period the City had no further obligation to respondents with respect to deposit or property.*" (Emphasis theirs.)

Kansas City in its brief on the prior appeal, page 21, asserted:

"Theoretically the refunds therein called for were to be made from revenues from sales of water to customers serviced by the particular main extension."

Home Builders' contention was that these contracts were not under Sec. 82 of the charter *because* they were contingent. The city's position was that the contracts were under Sec. 82 of the charter regardless of whether they were contingent or not.

This court, on the issue of whether the contracts required the certification provided for in Sec. 82 of the charter, held the contracts did not fall within Sec. 82 of the charter *because* they conferred only contingent rights on Home Builders. It, therefore, became necessary to identify and define that upon which the decision is premised—contingent rights. In so doing, this court held that the total fund out of which refunds could be paid to any particular contractor was limited to the total revenue derived from customers connected to the particular extension covered in the contracts as reduced by charges against that fund of the priority items set forth in Sec. 48 of the city's charter. Whether or not there would be any money left over after payment of the Sec. 48 expenses was the contingency without which the contracts would be invalid. Home Builders I, loc.cit. 115[4].

The question of what constituted the fund from which the refunds could be paid was necessary to the determination of the validity of the contracts themselves and this court's decision on that matter constitutes the law of this case. This is so whether the question is put with reference to the validity of the contracts or with reference to a construction of the contracts.

A decision of the Supreme Court of Missouri upon a point becomes the law of

the case upon that point and is controlling upon further proceedings in that case in the lower court. Jenkins v. Wabash Ry. Co., 232 Mo.App. 438, 107 S.W.2d 204, 211, State ex rel. Curtis v. Broaddus, 238 Mo. 189, 142 S.W. 340.

We hold that the decision of this court in the prior appeal of this case finally determined the issue pertaining to the fund from which refunds could be paid, and the trial court erred in utilizing the method set forth in paragraph A of Part II of the stipulation in computing refunds. Reimbursements of refunds on the contracts which is the subject matter of Counts II and III must be governed by the directions set forth by this court in Home Builders I, loc.cit. 115[4].

Home Builders argue that since the city and the plaintiffs, prior to the first appeal in this case, interpreted ordinance 22809 and ordinance 27276 and the contracts executed thereunder in the manner urged by Home Builders, that we should accede to that interpretation. The prior practice of the city was such that one might believe the city considered its obligations under the contracts to be fixed as evidenced by the practice of paying refunds out of revenue bond proceeds when the water fund was insufficient to pay the claimed refunds. As previously stated, the issues involved in the determination of the validity of these contracts included the question of the source of funds and these issues have been determined in Home Builders I, supra.

All of the records of revenues from residential and commercial customers connected to the extensions are maintained by and in the hands of the city. The city asserts that it has a record of each commercial customer hooked up to the extensions in question and from that can compute the water sold to and revenue derived from such hookups. In the case of individual customers, the city asserts that it

would not be impossible, but would be impractical and time consuming to go back and determine the amount of water used by and revenue derived from these customers. The city and Home Builders have stipulated that the average family unit uses 12000 cubic feet of water per year. Apparently the evidentiary problem exists because the city failed to keep all of its water consumption records for the extensions involved.

Time consuming though it may be, the best evidence would be the facts reflected in the city's records. Of course, if the average single-family unit utilizes 12000 cubic feet of water per year, the parties may so stipulate and use the revenue calculated thereon as the starting figure—revenue derived from the extensions. Thus it appears that the revenue derived from particular extensions can be shown with reasonable accuracy.

When this is shown in evidence, the net revenue will be the gross revenue from the extensions less the applicable deductions required by Sec. 48. The city asserts it does not maintain any records relating to the operating expenses assigned to particular water main extensions. Nevertheless, the burden of evidence with respect to the amount of money expended on the priority items is on the city and, consequently, the final figure of net revenue of a particular extension will depend on the city's ability to prove expense items directly attributable to that extension, and the sum remaining, if any, is the net revenue from the particular extension from which refunds can be paid.

■ The city asserts the trial court erred in making a conclusion of law that there are sufficient funds available in the city's water fund to make the refunds found by the court to be due respondents. In this connection, the city argues that apparently the trial court did not take into account the city's evidence of the need to maintain a working capital consisting of a cash balance of from three-quarters of a million dollars to a million dollars.

Since this case must be remanded to the trial court for the purpose of computing refunds under the ruling set forth in Home Builders I, we need not reach the question of whether the court did or did not err in finding that there were sufficient funds under the formula used by the trial court. With regard to the question of the city's claim respecting working capital, we observe that Sec. 48 of the charter requires the revenue be first devoted to *payment* of operating expenses, all maintenance and repair charges, and all costs due to obsolescence or other causes, payment of interest on bonds outstanding for waterwork purposes insofar as may be necessary, and then provides for a sinking fund to meet the principal of said bonds. The remainder is available for enlargements and extensions. Thus it appears that, with the exception of the sinking fund referred to, the charter speaks of *payments* out of the revenues and does not refer to a deduction for future working capital as an authorized reserve which the city may deduct as an independent item before arriving at the net revenue figure available for enlargements and extensions.

■ The city claims that plaintiffs are not entitled to interest on any amounts due under Count III and that the court erred in awarding such interest from date of judgment. Ordinance 27276 under which Count III contracts were executed provides: "There will be no interest or other charges assessed against the city for delinquent payment of refunds." This same provision was recited in the contracts. The court's amended judgment entered June 25, 1969, provided, "That the plaintiffs * * * were entitled to refunds as of October 1, 1968, * * * and that judgment for such amount, together with interest thereon from date of judgment, is hereby awarded to said plaintiffs * * *." The trial court was obviously

**10**

cognizant of the provision of ordinance 27276 and did not award interest from the date the refunds were *due* but only from date of judgment. The provision relating to no interest on delinquent refunds contemplates that it may occur that refunds would be due under the contracts but not paid, for the status of delinquency presupposes a prior duty to pay. The duty to pay refunds would necessarily precede the judgment. This provision excuses interest during whatever time elapses after the duty to pay occurs but does not specifically excuse interest on a judgment. Section 408.020, RSMo 1969, V.A.M.S., provides for interest on all monies after they become due and payable, etc. Section 408.-040 separately provides for interest on judgments. The provision of ordinance 27276 and the contract terms waived interest which would otherwise be assessed under § 408.020 but not interest on a judgment as provided for by § 408.040. The point is ruled against appellant. Of course, since the judgment of the court in this cause must be reversed and the cause remanded, the interest on the judgment entered June 25, 1969, will pass out of the case, but we have undertaken to rule this point in order, hopefully, to assist in the termination of this prolonged litigation by giving guidance with respect to a judgment which may hereafter follow.

The amended judgments as to Counts II and III entered June 25, 1969, are reversed and the cause is remanded as to Counts II and III to permit the trial court to amend its judgments with reference to reimbursement in accordance with the views expressed by this court in Homebuilders Ass'n of Greater Kansas City v. Kansas City, Mo., 431 S.W.2d 111, and herein, and to permit the trial court to determine the status of refunds on said contracts and the sums, if any, to which plaintiffs are entitled.

All concur except DONNELLY, J., not participating in decision.