HOME BUILDERS ASSOCIATION OF
GREATER KANSAS CITY et al.,
Plaintiffs-Appellants,

v.

KANSAS CITY, Missouri, Defendant-
Respondent.

No. 58424.

Supreme Court of Missouri,
En Banc.

April 8, 1974.

Rehearing Denied May 13, 1974.

James E. Grier, R. Dennis Wright, Kansas City, for plaintiffs-appellants; Hillix, Brewer & Myers, Kansas City, of counsel.

Aaron A. Wilson, City Counselor, Carrol C. Kennett, Associate City Counselor, Kansas City, for defendant-respondent.

SEILER, Judge.

This is the third appeal in this suit for declaratory judgment. Plaintiffs are the assignees of 89 water main extension contracts with the city of Kansas City under which various contractors, builders, and plaintiffs furnished money for extension of water mains and were to receive refunds on their advances from revenues derived from customers who connected into the extensions installed. The present judgment is for $47,478.11 on count II and $156,148.53 on count III. The first two appeals went directly to this court, under the jurisdictional provisions then in force. The present appeal went first to the court of appeals, Kansas City district, under the revised jurisdictional provisions of the 1970 amendment to Art. V, 1945 Constitution, V.A.M.S. but was then transferred here by our order from the court of appeals, before opinion, pursuant to rule 83.06, V.A.M.R. We affirm, with certain modifications.

On the first appeal, Home Builders Association of Greater Kansas City v. Kansas City, 431 S.W.2d 111 (Mo. banc 1968), hereinafter referred to as Home Builders I, we upheld the validity of the water main extension contracts against a challenge that they overextended the city's debt limit. We held that refunds under the contracts were contingent on the water main extensions producing net revenues from which refunds could be paid. We remanded to the trial court for determination of the net revenues available for refunds to plaintiffs under the contracts. In the course of our opinion we said, l. c. 115:

". . . [I]t should be noted that Sec. 48 of the city charter provides that all revenue from the waterworks must be devoted first to payment of operating expenses, maintenance and repair charges, costs due to obsolescence or other causes, and such sums as are required for interest and principal on bonds. The remainder of such revenue then is available for enlargements and extensions. The contracts here involved fall within this latter category.

". . .

". . . [T]he reimbursement to which plaintiffs are entitled under their contracts is to be from net revenue from customers connected to the particular extension in accordance with their contracts and the requirements of Sec. 48 of the charter . . ."

In the trial following Home Builders I, the trial court entered judgment for plaintiffs in the amount of $391,909.05, the total amount which they had advanced to the city for the water main extensions, holding that the refunds could be paid from the net revenue available in the city's water fund, which contained net revenues from the entire water system for extension and betterments of the city's water plant as determined and required by Sec. 48 of the city charter.

The city appealed and this court, in Home Builders Association of Greater Kansas City v. Kansas City, 464 S.W.2d 5 (Mo. banc 1971), hereinafter referred to as Home Builders II, held that payments of refunds could not be made out of the general water fund, which includes net revenues from operation of the entire water department, but that the reimbursements to which plaintiffs are entitled under their contracts were to be from net revenues from customers connected to the particular extensions. This court's opinion said in part, l. c. 9:

". . . [I]t appears that the revenue derived from particular extensions can be shown with reasonable accuracy.

"When this is shown in evidence, the net revenue will be the gross revenue from the extensions less the applicable deductions required by Sec. 48. The city asserts it does not maintain any records relating to the operating expenses assigned to particular water main extensions. Nevertheless, the burden of evidence with respect to the amount of money expended on the priority items is on the city and, consequently, the final figure of net revenue of a particular extension will depend on the city's ability to prove expense items directly attributable

to that extension, and the sum remaining, if any, is the net revenue from the particular extension from which refunds can be paid."

The cause was remanded to the trial court for determination of the funds available for payment of refunds under the method prescribed. The case was again tried and the present appeal followed.

The parties stipulated that the average yearly water use per residential customer on the water main extensions in issue was 12000 cubic feet per year and that the total gross revenues derived from the water main extensions was $386,465.28. The city then proceeded to prove the net revenue by first establishing the expenses which could be deducted from gross revenues from the water main extensions. This the city did by prorating the operating expenses and debt service of the entire water system based on the stipulated amount of water used by the water main extensions in issue. The procedure was to divide the operating expenses and debt service of the water department (excluding obsolescence) by the number of 100 cubic feet units of water sold. This varied from year to year, from a low of $0.1646 to a high of $0.2986 per unit. The trial court accepted the city's proof of expenses by this averaging or prorating method, and deducted the expenses thus shown from the stipulated gross revenues, thereby determining the net revenues of the water main extensions in issue, the fund from which refunds on the water main extension contracts are payable to plaintiffs.

The trial court filed a written opinion which clearly sets forth the positions of plaintiffs and defendant on appeal as follows:

". . . [T]he plaintiffs have insisted that the city must prove expenses *directly* attributable to each water main extension, and failing or being unable to do so, has failed to bear the burden of proof imposed upon it by the Supreme Court to prove its costs and net revenues and therefore plain-

tiffs are entitled to be paid from the gross revenues to the extent of those revenues. The City maintains that it cannot segregate from its overall expenses of supplying water to its customers the expenses *directly* attributable to supplying water to a small number of customers connected to a water main extension that constitutes only a small fractional part of the City's water system because, it says, a water main extension is just that, a small extension of the whole system, and when water for the whole system is taken from the Missouri River at one point, run through the purification plant, pumped through transmission mains, through distribution mains, and infinitesimal portions of the whole finally delivered to customers connected to one of the main extensions in issue it is impossible to isolate the costs *directly* attributable to supplying water through any particular water main extension and the only way that such costs can be allocated is by averaging. The parties have stipulated to the volumes of water consumed by the customers connected to the main extensions in issue and the gross revenues derived by the City from these customers. The City has introduced evidence of its average costs per 100 cubic feet of water of serving water to its residential customers to determine its net revenues realized from the subject main extensions."

The trial court accepted the city's contentions as to deductible expenses and method of proof of those expenses. We agree with the trial court's treatment of this problem.

Plaintiffs contend that the trial court's opinion did not follow the law of the case as established in Home Builders II and contend the city did not satisfy the burden of evidence placed on it by this court in that opinion; that under this court's opinion in Home Builders II, the city had the burden of evidence to prove Sec. 48 expenses, "directly attributable" to the water main extensions in issue; that the city's method of proving those expenses by prorating or averaging the expenses of the entire water system based on the stipulated

water consumption from the water main extensions in issue was specifically rejected by this court in Home Builders II and does not satisfy the city's burden of proof.

Plaintiffs basically are arguing that defendant's proof of expenses is lacking in two respects: First, because it is based on a prorating or averaging method rather than itemized proof of the Sec. 48 expenses of the water main extensions in issue and second, because the expenses thus prorated contain indirect expenses, not just those "directly attributable" to the water main extensions in issue.

As to this second point, plaintiffs seem to be arguing that expenses can only be deducted which "but for" the water main extensions would not have been incurred. The city argues that in addition to these added expenses which result from the water main extension, the extensions must share in the expenses of maintaining the entire water system by which they are served. As to this point, plaintiffs are somewhat in the position of the boy who wanted to share his friend's soda, but rather than pay a nickel for half of the drink, only wanted to pay the additional penny it cost for the extra straw.

Plaintiffs' position is not supported by a careful reading of Home Builders II. There, in addition to the language quoted earlier which is cited by plaintiffs referring to "expense items directly attributable to that extension", the court said (464 S. W.2d l. c. 8) the proper method of computation of refunds was established in Home Builders I, which held ". . . that the total fund out of which refunds could be paid to any particular contractor was limited to the total revenue derived from customers connected to the particular extension covered in the contracts as reduced by charges against that fund of the priority items set forth in Sec. 48 of the city's charter . . ."

This court in Home Builders I and II held that there was no money available for payment of refunds until after payment of Sec. 48 expenses. Section 48 expenses include operating expenses, maintenance and repair charges, costs due to obsolescence, payment of interest on bonds—many expenses which under plaintiffs' argument are not directly attributable to the water main extensions, if it is true that to be "directly attributable" an expense cannot be one related to other parts of the water system, but must be an expense confined exclusively to these particular extensions.

■ Plaintiffs do not give examples of what they consider to be expenses directly attributable to the water main extensions, but no doubt repairing a break in one of the extension mains would fit their concept. However, we do not read the language of Home Builders II as limiting deductible expense so narrowly. In our opinion, whatever is the proportionate share for the water consumed from these mains of what it cost to gather, make ready, and deliver the water in fit condition for human consumption, is expense directly attributable to the water main extensions. Their only justification for existence is to serve as the final link in delivering the water. The court's decision in Home Builders II did not hold that the water main extensions did not have to share in the expense of maintaining the system by which they are served and that a share of such expenses could not be deducted in determining their net revenue. In fact, a careful reading of Homebuilders I and II shows that such expenses not only can, but must be deducted under Sec. 48 of the city charter, before there is any revenue from which refunds can be paid. As set forth earlier, the court said in Homebuilders II, l. c. 9: "When this is shown in evidence [referring to the revenue derived from the particular extensions], the net revenue will be the gross revenue from the extensions less the applicable deductions required by Sec. 48 . . ." Thus it is clear that it was intended that the water main extensions bear a share of these expenses.

If plaintiffs are correct, and the city can only deduct expenses from gross revenues

which would not have been incurred "but for" the water main extensions, then arguably the city could be liable for refunds where, as to the water main extensions in issue there were net revenues, but where no net revenues resulted from operation of the water department as a whole. This result would violate Sec. 48 of the city charter and this court's holding in Home Builders I and points up the inescapable fact that expenses directly attributable to the water main extensions necessarily cannot be limited to what it cost to maintain the water main extensions in question after the water was in situ, even if the city could produce such cost figures.

This leads to plaintiffs' first point mentioned above—their objection to the city's proof of expenses by an averaging or prorating method. Since, as we have held, the water main extensions in issue must bear their share of the Sec. 48 expenses, some averaging or prorating is necessary, as it would be impossible to show, in any other way, the costs and expenses required to convert these extensions from empty, useless pipes buried in the ground to the means of delivering water to customers at the end of the water treatment process. This process began with the intake of the water to the plant followed by treatment, purification, storage, pumping and distribution, all requiring substantial capital or operating expenditures by the city which are as directly attributable to the water main extensions in question as to any of the other city mains.

■ The trial court's decision does not conflict with our decision in Home Builders II. There we held that the burden of evidence was on the city to prove deductible expenses, that is, the water main extensions' share of Sec. 48 expenses. The city has satisfied this burden of proof by an averaging method reasonably calculated to achieve a fair determination of the expenses directly attributable to the water main extensions in issue and which is the best evidence available of those expenses.

There is one other matter before concluding. The trial court referred to two exhibits in arriving at the amount of its judgment. These exhibits each contained three columns relevant to this discussion. The first column, entitled "Amount of Refund Due", contains the total amounts due under the contracts. The second column is entitled "Previous Payments" and shows refunds which have already been paid on the contracts. Plaintiffs' original petition admits and the parties stipulated that the city had made prior refunds in amounts totalling at least the total amount of refunds shown in the previous payments column of the exhibit. The third column, "Net Refund Due", shows the amount still owing on the various contracts after subtracting the previous payments or refunds already made on those contracts. The trial court's judgment recites that plaintiffs are entitled to the *unrefunded* balances of the deposits made pursuant to the water main extension contracts and the court's findings of fact state, "The refunds due each plaintiff under each . . . Water Main Extension Contract in issue . . . less refunds already paid, are shown on [the] Exhibit . . . attached hereto in the column entitled 'Amount of Refund Due' ". This language shows that the trial court intended to give the city credit for refunds already paid, but erroneously entered judgment for the total amount shown in the "Amount of Refund Due" column rather than the amount shown in the "Net Refund Due" column, which reflects credit for the prior refunds. We note, also, that plaintiffs admitted in oral argument that the trial court forgot to subtract the amounts previously paid.

We accordingly correct the trial court's judgment under rule 84.14, so as to give the city credit for refunds previously paid on these contracts. Judgment is therefore affirmed in the amount of $11,909.05 on count II and in the amount of $100,150.94 on count III, and the trial court is ordered to amend its judgment accordingly.

All of the Judges concur.